Paul R. Kiesel, State Bar No. 119854
  *kiesel@kiesel.law*
Helen Zukin, State Bar No. 117933
  *zukin@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

Barrett L. Beasley, State Bar No. 194143
  *bbeasley@salim-beasley.com*
**SALIM-BEASLEY, LLC**
1901 Texas Street
Natchitoches, Louisiana 71457
Tel:   (318) 352-5999
Fax:   (318) 352-5998

Attorneys for Plaintiff
Dolores Williams

<div style="text-align:center">

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

</div>

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DOLORES WILLIAMS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MCKESSON CORPORATION, a corporation; BRISTOL-MYERS SQUIBB, a corporation; PFIZER, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:16-cv-08133-MWF-FFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES TO REMAND FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION; AND DECLARATION OF HELEN ZUKIN IN SUPPORT THEREOF**<br><br>Judge:  Michael W. Fitzgerald<br>Date:   December 12, 2016<br>Time:   10:00 a.m.<br>Crtrm.: 1600 – 16th Floor<br><br>Complaint Filed: October 12, 2016<br>in Los Angeles County Superior Court |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN THAT** on December 12, 2016, at 10:00 a.m., or as soon thereafter as the matter can be heard, before the Honorable Judge Michael W. Fitzgerald, Courtroom 1600 (16th Floor) of the United States District Court for the Central District of California, Spring Street Courthouse located at 312 North Spring Street, Los Angeles, CA 90012, Plaintiff will and hereby does move the Court for an Order remanding this action to the Superior Court for Los Angeles County, State of California, pursuant to 28 U.S.C. § 1447, on the grounds that (1) this court lacks subject matter jurisdiction over this action as complete diversity is lacking, (2) the removal violated the forum defendant rule, and (3) no independent federal jurisdiction exists allowing this action to be heard in Federal Court.

Complete diversity does not exist in this case because Plaintiff is a citizen of the same state as the forum defendant, McKesson Corporation ("McKesson"). The forum-defendant rule precludes removal because California is the principle place of business of McKesson, and therefore, it is a California citizen. A review of the allegations in Plaintiff's Complaint, attached to the Notice of Removal by Bristol-Meyer Squibb Company ("BMS") and Pfizer Inc. ("Pfizer") demonstrates the valid factual and legal claims against McKesson, the distributor of Eliquis, under California law. In their Notice of Removal, BMS and Pfizer fail to satisfy their heavy burden of proving by clear and convincing evidence that McKesson is fraudulently joined.

Furthermore, Defendants' Notice of Removal fails to establish that McKesson is not a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure; therefore, McKesson should not be severed under Rule 21 of the Federal Rules of Civil Procedure.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 1, 2016, and is based on the Notice of Motion, the accompanying Memorandum of Points and Authorities, and on the papers, records,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

1   and pleadings on file herein, and such arguments as the Court may allow.

2

3   DATED: November 8, 2016          Respectfully submitted,

4                                    **KIESEL LAW LLP**

5

6

7                                    By:    _____*/s/ Helen Zukin*_____

8                                           Paul R. Kiesel
                                            Helen Zukin
9
10                                          **SALIM-BEASLEY, LLC**
                                            Barrett L. Beasley
11
12                                          Attorneys for Plaintiff
                                            Dolores Williams
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     STATEMENT OF RELEVANT FACTS .....................................................3

III.    ARGUMENT ................................................................................................5

    A.   BMS and Pfizer Have Not Satisfied their Removal Burden.....................5

    B.   Diversity Jurisdiction Does Not Exist.....................................................6

    C.   McKesson is not a Fraudulently Joined Party..........................................6

        1.   California Law Applies Strict Liability Principles to Distributors of
             Defective Products ..........................................................................7

        2.   The Allegations in the Complaint are Sufficient to Meet California's
             Liberal Pleading Standard ...............................................................12

    D.   Removal Violates the Forum Defendant Rule .........................................16

    E.   Defendants' Argument that McKesson is Not a Necessary and
         Indispensable Party is Without Merit......................................................16

IV.    CONCLUSION ............................................................................................19

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# TABLE OF AUTHORITIES

<u>Cases</u>

*A.S. v. Pfizer, Inc.,* No. 1:13-cv-00524 - LJO - JLT, 2013 U.S. Dist. LEXIS 76307, at *28-29 (E.D. Cal. May 29, 2013)....................................................................15

*Aaroe, et al. v. Merck*, CV 05-4073-JFW (MANx), BC 328952, 2005 U.S. Dist. LEXIS 40745 (C.D. Cal. 2005)..............................................................................10

*Aaron v. Merck & Co.,* No. CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, at *5 (C.D. Cal. July 26, 2005) ..........................................................14

*Anderson v. Owens-Corning Fiberglass Corp.,* 53 Cal.3d 987, 994 (1991)..............8

*Bartal v. Astrazeneca Pharms. LP*, No. 5: 12-cv-02548 (PSG) RMW, 2012 U.S. Dist. LEXIS 109215, at *8 (N.D. Cal. Aug. 3, 2012)............................................10

*Black v. Merck & Co., Inc.,* No. CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, at *7 (C.D. Cal. Mar. 3, 2004) ..........................................................13

*Bleecher v. Bayer Corp.* (*In re Yasmin & YAZ (Drospirenone) Mktg, Sales Practices and Products Liability Litig.* 779 F.Supp.2d 846 (S.D. Ill. 2010) ...................9

*Bostick v. Flex Equipment Co., Inc.,* 147 Cal.App.4th 80, 88 (2d Dist. 2007)1,  7,   8, 17

*Boxer v. Accuray Inc.,* 906 F.Supp.2d 1012, 1015 (N.D. Cal. 2012)........................5

*Burris v. AT&T Wireless, Inc.,* No. C 06-02904 JSW, 2006 U.S. Dist. LEXIS 52437, at *3 (N.D. Cal. July 19, 2006) ..................................................................15

*California ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 838 (9th Cir. 2004) ..........6

*Caouette v. Bristol-Myers Squibb Co.,* No. C-12-1814 EMC, 2012 U.S. Dist. LEXIS 113980, at *26 (N.D. Cal. Aug. 10, 2012) ......................................................11

*Carlin v. Superior Court*, 13 Cal. 4th 1104, 1112 (1996) ........................................11

*Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 130 (1972) ...........................................8

*Crowe v Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).........................................7

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d 1150 (9th Cir. 2002)....................................................................................18

*Diaz v. Allstate Ins. Group,* 185 F.R.D. 581, 595 (C.D. CA 1998) ..........................19

*EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 780 (9th Cir.2005)...........................18

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) ........................5

*Gallo, et al. v. Bayer, et al.*, CV-09-8211-JFW (C.D. Cal. Nov. 2009)....................10

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir. 1992) .................................................5, 6

*Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 698 (9th Cir. 2005) ...................3

*Hatherley v. Pfizer, Inc.,* No. Civ. 2:13-00719 WBS CKD, 2013 U.S. Dist. LEXIS 93943, at *7-8 (E.D. Cal. July 3, 2013) ....................................................11, 13

*Humanitarian Law Project v. U.S. Treasury Dept.,* 578 F.3d 1133 (9th Cir. 2009) ..2

*Hunter v. Philip Morris USA,* 582 F.3d 1039, 1045 (9th Cir. 2009) ..........................7

*In re Avandia Mktg.,* 624 F. Supp. 2d at 418................................................7, 11, 14, 15

*In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation,* 2013 WL 6050627, *2 (E.D. Pa., Nov. 14, 2013) ...........................................................11

*Jimenez v. Superior Court,* 29 Cal.4th 473, 477-78 (2002) ........................................8

*Kelly v. Amylin Pharms., LLC,* No. 14cv1086 AJB (MDD), 2014 U.S. Dist. LEXIS 153117, at *24 (S.D. Cal. Aug. 8, 2014)......................................................18

*Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994) ................................6

*Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979).................6

*Lively v. Wild Oats Markets, Inc.,* 456 F.3d 933, 939 (9th Cir. 2006) .....................16

*Maher v. Novartis,* CASE NO. 07CV852 WQH (JMA), 2007 U.S. Dist. LEXIS 58984 (S.D. Cal. 2007)...............................................................................9, 10

*Mandernach v. Bayer Corp.,* No. 5:09-cv-02306-JHN-OPx, 2010 U.S. Dist. LEXIS 19541, at *5-7 (C.D. Cal. Feb. 8, 2010)............................................................13

*Martin v. Merck,* 2005 U.S. Dist. LEXIS 41232 (E.D. Cal. 2005) ...........................10

*McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1457, 1469-70 (2d Dist. 2006)........12

*Moorhouse v. Bayer,* No. 08-01831, 2008 U.S. Dist. LEXIS 48833 (N.D. Cal. 2008) .................................................................................................8, 9, 10

*Morris v. Princess Cruises, Inc.,* 236 F.3d 1061 (9th Cir. 2001)................................7

*Nasrawi v. Buck Consultants, LLC,* 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011) ...........................................................................................................11, 15

*Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 837-38, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989) .........................................................................................18

*Oliver v. McNeil-PPC, Inc.,* No. 1:12-cv-01865-AWI-SAB, 2013 U.S. Dist. LEXIS 14959, at *16 (E.D. Cal. Feb. 1, 2013) .........................................................15

*Ott v. Avis Rent A Car System, LLC,* No. C12-5762 BHS, 2012 WL 5727029 (W.D. Wash. Nov. 15, 2012).......................................................................................5

*Padilla v. AT&T Corp.,* 697 F. Supp. 2d 1156, 1159-60 (C.D. Cal. 2009)...............15

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

iii

*Plute v. Roadway Package System, Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) ..................................................................................................7, 14

*Potter v. Hughes,* 546 F.3d 1051 (9th Cir. 2008) ..........................................2

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ...............................................................................................6

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) .......................2

*Sams v. Beech Aircraft Corp.,* 625 F.2d 273, 278 (9th Cir. 1980) ..............17

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).......5, 19

*Sanchez v. Sears Roebuck & Co.*, No. C-97-0105 SC, 1997 U.S. Dist. LEXIS 6003, at *9 (N.D. Cal. May 2, 1997) ...............................................18

*Spencer v. U.S. Dist. Ct. N.D. Cal. (Altec Indus., Inc.)*, 393 F.3d 867, 870 (9th Cir. 2004) ......................................................................................1, 16

*Vandermark v. Ford*, 61 Cal.2d 256, 262 (1964) ......................................1, 8

*Wise v. Wachovia Securities, LLC,* 450 F.3d 265, 267 (7th Cir. 2006) ...................6

*Zachman v. Johnson & Johnson*, No. 15-cv-04285-RS, 2015 U.S. Dist. LEXIS 161134, at *14-15 (N.D. Cal. Nov. 30, 2015)...............................10

Federal Cases

28 U.S.C. § 1441 ...............................................................................................6

28 U.S.C. § 1441(a) ..........................................................................................5

28 U.S.C. § 1441(b)(2) ...................................................................................16

28 U.S.C. § 1446 ...............................................................................................3

28 U.S.C. § 1447 ...............................................................................................1

28 U.S.C. § 1447(c) ......................................................................................3, 6

28 U.S.C. §§ 1332 ............................................................................................6

California Cases

Manual for Complex Litigation § 20.131 (4th ed. 2004) ...........................2

Out-of-State Cases

CAL. CIV. PROC. CODE § 425.10(a)(1) .........................................................12

FED. R. CIV. P. 19(a) .......................................................................................17

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

FED. R. CIV. P. 19(b) ........................................................................................17, 18

JPML Rule 2.1(d) ....................................................................................................2

Rule 19 of the Federal Rules of Civil Procedure........................................16

Rule 21 of the Federal Rules of Civil Procedure........................................16

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This case originated on October 12, 2016, as a state tort action in the Superior Court of California, Los Angeles County, on behalf of Plaintiff Dolores Williams against Defendants BMS, Pfizer, and McKesson. Plaintiff filed suit against Defendants jointly for the manufacture, distribution, marketing, promotion, and sale of a prescription drug, Eliquis. Plaintiff seeks recourse for the severe, life-threatening bleeding injuries suffered as a result of exposure to Eliquis.

Defendants never deny that McKesson Corporation distributes Eliquis in California. *See* BMS and Pfizer, Inc.'s Notice of Removal, at Doc. 1.  Consequently, McKesson is a forum defendant, which destroys diversity of citizenship. *See, e.g., Spencer v. U.S. Dist. Ct. N.D. Cal. (Altec Indus., Inc.)*, 393 F.3d 867, 870 (9th Cir. 2004).

Disregarding the facts and law, BMS and Pfizer removed this case contending that the prescription drug distributor McKesson had been fraudulently joined. As BMS and Pfizer are well aware, their fraudulent joinder argument has been consistently and soundly rejected by federal courts in this Circuit and across the country. California law permits strict liability actions against distributors of defective products. *See, e.g., Bostick v. Flex Equipment Co., Inc.,* 147 Cal. App. 4th 80, 88 (2d Dist. 2007); *Vandermark v. Ford*, 61 Cal. 2d 256, 262 (1964). This Court should also reject BMS and Pfizer's baseless argument for what it is—a prejudicial tactic—and remand this action to state court.

As an alternative to the fraudulent joinder argument, BMS and Pfizer request that the Court sever and remand Plaintiff's claims against McKesson because McKesson is not a necessary and indispensable party. This alternative argument likewise fails. Severing McKesson from this proceeding solely to create diversity would prejudice Plaintiff, is impractical, and would result in a waste of judicial resources since severing McKesson would result in another tier of proceedings

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    regarding the subject pharmaceutical drug produced and/or distributed by all three

2    Defendants. Moreover, McKesson is not an indispensable party because Plaintiff

3    would not have complete relief if McKesson is severed as Plaintiff alleges that

4    punitive damages should be awarded based on the Defendants' conspiracy to

5    mislead the medical community and the public, including Plaintiff, regarding the

6    dangerous, life-threatening, and sometimes fatal consequences of ingesting Eliquis.

7        In conjunction with the Notice of Removal, BMS and Pfizer filed an "*Ex*

8    *Parte* Application to Stay Case pending Resolution of Petition to JPML." *See Ex*

9    *Parte*, at Doc. 7. In that *Ex Parte*, BMS and Pfizer improperly sought a stay of this

10   matter pending a decision by the United States Judicial Panel of Multidistrict

11   Litigation ("JPML"). *Id.* As an urgent procedural matter, Plaintiff requests that

12   Court rule on the issue of jurisdiction before the case is transferred to the JPML.

13   Failure to do so would result in needless delay and concrete prejudice to Plaintiff,

14   and unjustifiably reward BMS and Pfizer for wasting this Court's and the parties'

15   resources with a frivolous removal. Plaintiff submits that the Court should give

16   priority to the subject matter jurisdiction questions rather than stay the proceedings

17   as BMS and Pfizer request. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578

18   (1999) ("Customarily, a federal court first resolves doubt about its jurisdiction over

19   the subject matter."); *See Humanitarian Law Project v. U.S. Treasury Dept.,* 578

20   F.3d 1133 (9th Cir. 2009) (holding that all courts have a continuing obligation to

21   assess jurisdiction); *see also* Manual for Complex Litigation § 20.131 (4th ed.

22   2004); JPML Rule 2.1(d). Therefore, federal courts should resolve questions of

23   subject matter jurisdiction before reaching other threshold issues. *Potter v. Hughes,*

24   546 F.3d 1051 (9th Cir. 2008). Rule 2.1(d) of the Federal Rules of Procedure of the

25   Judicial Panel on Multidistrict Litigation states that the pendency of a motion to

26   transfer does not affect or suspend pretrial proceedings in any pending action and

27   does not limit its pretrial jurisdiction.

28       Relatedly, on October 20, 2016, Plaintiff, along with several other litigants

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

who have filed California state actions against Defendants regarding the sale and distribution of Eliquis, have filed a Petition for Coordination with the Judicial Council of California. *See* JCCP Petition, attached as Exhibit "A" to the Declaration of Helen Zukin ("Zukin Decl."). Removing this action after the Plaintiff filed the JCCP Petition is yet another example of BMS and Pfizer filing this removal solely for purposes of delay.

Furthermore, removal is strictly construed in favor of remand to protect the jurisdiction of state courts (*Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 698 (9th Cir. 2005)), thus immediate determination of jurisdiction is required. Indeed, the United States Court of Appeals for the Ninth Circuit's interpretation of 28 U.S.C. § 1446 is consistent with the goal of strictly construing removal, "which guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation." *Harris*, 425 F. 3d at 698.

Plaintiff requests immediate consideration of Plaintiff's Motion to Remand for Lack of Federal Subject Matter Jurisdiction because the purported removal is premised on entirely inaccurate propositions, and is intended by BMS and Pfizer to cause undue delay and prejudice to Plaintiff. Under § 1447(c), this Court has the authority to immediately remand this action to the Los Angeles County Superior Court, where it was originally filed, and from where it was improperly removed.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff filed suit against Defendants jointly for the manufacture, distribution, marketing, promotion, and sale of a prescription drug, Eliquis. Plaintiff experienced lower gastrointestinal bleeding, and severe pain and suffering. Doc. 1-4, (Compl. ¶ 8).  In the Complaint filed in the Superior Court of the State of California, Los Angeles County, Plaintiff asserts six causes of action: (1) Negligence, (2) Strict Products Liability – Design Defect, (3) Strict Products Liability – Failure to Warn, (4) Breach of Express Warranty, (5) Breach of Implied Warranty, (6) Negligent Misrepresentation, (7) Deceit by Concealment – California Civil Code §§ 1709,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    1710, and (8) Fraud.

2    Relevant here, Defendants never deny that McKesson Corporation distributes

3    Eliquis in California. *See* BMS and Pfizer, Inc.'s Notice of Removal, at Doc. 1.

4    McKesson is a citizen of both Delaware and California, with its principal place of

5    business located in California. As one of the largest distributors of prescription

6    drugs in the nation, McKesson is also involved in several levels of marketing,

7    advertising, and promoting products for its drug-manufacturing clients.   On its

8    website, McKesson announces:

9        McKesson facilitates access to your pharmaceutical products

10       through reimbursement assistance, subsidized care and safety

11       programs. We deliver your brand message to patients and

12       pharmacies through multiple communication channels such as

13       email, behavioral call campaigns and more. We build long-term

14       brand relationships by helping you overcome the financial,

15       operational and behavioral barriers to medication adherence by

16       consumers and patients."

17   *See* McKesson's Website, attached as Exhibit "B" to the Zukin Decl.

18       The Complaint alleges that at all relevant times, McKesson packaged,

19   marketed, distributed, promoted, and sold Eliquis in California, including Los

20   Angeles County. Specifically, McKesson promoted and marketed Eliquis through

21   various channels and programs, including but not limited to discount card programs

22   and patient adherence programs.  *See* Plaintiff's Complaint for Damages, at Doc. 1-

23   4 (Compl. ¶ 12). The Complaint further alleges McKesson supplied the Eliquis pills

24   that Plaintiff ingested.  (*Id*. ¶ 14).

25       As an example of McKesson's marketing and promoting activities, McKesson

26   provided consumers with incentives to use Eliquis such as a "Free 30-Day Trial

27   Offer" and a "$10 Co-pay Card." *See* McKesson's Eliquis Coupon, attached as

28   Exhibit "C" to the  Zukin Decl. If pharmacists needed assistance regarding

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

processing these offers for Eliquis, they were told to contact McKesson directly. *Id.* If consumers using the $10 Co-pay Card needed to process a rebate manually they were directed to www.patientrebateonline.com, which is a website owned and operated by McKesson, which displays the McKesson name prominently. *See* McKesson's Rebate Website, attached as Exhibit "D" to the Zukin Decl.

As set forth more fully below, Defendants' assertions are incorrect, and this matter should be remanded. Complete diversity is absent in this case, and there is no fraudulent joinder. Further, suit was properly filed in the state and county in which one of the legitimately named Defendants, McKesson, maintains its principal place of business. For these reasons, removal was improper and this case should be remanded to the Superior Court of Los Angeles County for lack of federal jurisdiction.

## III.   ARGUMENT

### A.   BMS and Pfizer Have Not Satisfied their Removal Burden

The plaintiff is the "master" of the case. *Boxer v. Accuray Inc.,* 906 F.Supp.2d 1012, 1015 (N.D. Cal. 2012). Therefore, plaintiffs may choose their own forum in which to proceed. *Ott v. Avis Rent A Car System, LLC*, No. C12-5762 BHS, 2012 WL 5727029 (W.D. Wash. Nov. 15, 2012). In other words, a plaintiff's right to choose the forum is greater than a defendant's right to remove; they are not equal. *Emrich v. Touche Ross & Co.,* 846 F. 2d 1190, 1195 (9th Cir. 1988).

A defendant may only remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988); *see Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir. 1992). The removal

statute is strictly construed against removal, and all doubts respecting jurisdiction are resolved in favor of remand. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004); *Gaus*, 980 F.2d at 566; *Libhart v. Santa Monica Dairy Co*., 592 F.2d 1062, 1064 (9th Cir. 1979).

### B.    Diversity Jurisdiction Does Not Exist

Before a federal court may adjudicate a matter, it must have subject matter jurisdiction over the proceeding. It must always be borne in mind that "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute … which is not to be expanded by judicial decree … it is to be presumed that a cause lies outside this limited jurisdiction … and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994) (citations omitted).

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000. 28 U.S.C. §§ 1332, 1441. If at any time before final judgment it appears that a district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. 28 U.S.C. § 1447(c). As noted above, complete diversity jurisdiction does not exist between Plaintiff and the forum defendant, McKesson. It is indisputable that diversity does not exist on the pleadings in the case at bar. There is no dispute that McKesson is a citizen of California.  *See Wise v. Wachovia Securities, LLC,* 450 F.3d 265, 267 (7th Cir. 2006). As BMS and Pfizer concedes, Plaintiff is a citizen of California. Accordingly, on the face of the pleadings, there is not complete diversity between the parties.

### C.    McKesson is not a Fraudulently Joined Party

It is well settled that a non-diverse defendant is fraudulently joined, and their citizenship ignored for purposes of determining the propriety of removal, only where a complaint "fails to state a cause of action against the resident defendant,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001). "There is a presumption against finding fraudulent joinder, and defendants who assert that [the] Plaintiffs have fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package System, Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001); *Hunter*, 582 F.3d at 1044. "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Plute*, 141 F. Supp. 2d 1008 (quoting *Dodson v. Spiliada Maritime Corp*., 951 F.2d 40, 42-43 (5th Cir. 1992)).

It must be "obvious from the face of the complaint that [the plaintiff] has failed to state a claim" against the non-diverse defendant. *Hunter*, 582 F.3d at 1044; *Crowe v Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *In re Avandia Mktg.*, 624 F. Supp. 2d at 418 ("Any piercing of the allegations by the Court must not be a 'summary judgment type inquiry,' requiring the parties to marshal evidence supportive of the elements of their claims or defenses. Rather it must be more 'limited,' evaluating questions such as whether the facts pleaded are impossible or fatally inconsistent . . . ."). The sole issue for consideration is whether the plaintiff has a colorable claim against the defendant. "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Hunter*, 582 F.3d at 1044 (citation and internal quotation marks omitted).

### 1. Califonia Law Applies Strict Liability Principles to Distributors of Defective Products

Plaintiff states a viable claim against McKesson because California law permits strict liability actions against distributors of defective products. *Bostick v. Flex Equipment Co., Inc.,* 147 Cal. App. 4th 80, 88 (2d Dist. 2007).

1   The Supreme Court of California, in *Vandermark v. Ford*, 61 Cal.2d 256, 262
2   (1964), applied strict liability principles to retailers "engaged in distributing goods
3   to the public."   The court found distributors to be "an integral part of the overall
4   producing and marketing enterprise that should bear the cost of injuries resulting
5   from defective products."   *Id.*   From a public policy standpoint, applying strict
6   liability "serves as an added incentive to safety" because distributors "may play a
7   substantial part in insuring that the product is safe or may be in a position to exert
8   pressure on the manufacturer."   *Id.* at 262-63.   To that end, "strict liability on the
9   manufacturer and [distributor] alike affords maximum protection to the injured
10   plaintiff and works no injustice to the defendants." *Id.*   Such an added safety
11   measure may prove critical where, as here, a defective product could have life-
12   threatening consequences.

13   Numerous California courts have joined in *Vandermark*'s reasoning.   *See e.g.*
14   *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994 (1991)
15   (extended strict liability for failure to warn to distributors of defective product);
16   *Jimenez v. Superior Court*, 29 Cal. 4th 473, 477-78 (2002) (distributors and
17   suppliers strictly liable for injuries caused by defective products); *Cronin v. J.B.E.*
18   *Olson Corp.*, 8 Cal. 3d 121, 130 (1972) (*citing Vandermark*); *Bostick,* 147 Cal. App.
19   4th at 94 (plaintiff not required to prove negligence of distributor because strict
20   liability applies)).   Federal courts applying California law also hold distributors
21   strictly liable for defective products and failure to warn, even in the pharmaceutical
22   context.   *See Moorhouse v. Bayer*, No. 08-01831, 2008 U.S. Dist. LEXIS 48833
23   (N.D. Cal. 2008).

24   For example, in *Moorhouse, supra* at *4, Defendant Bayer removed the
25   pharmaceutical product liability suit based on McKesson's allegedly fraudulent
26   joinder. Bayer's allegation of frivolous joinder rested on the fact that "in the context
27   of prescription drugs, no published California opinion has recognized a cause of
28   action against distributors for failure to warn." *Id.* at *9. The court rejected this

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

reasoning, noting that the absence of a published decision is not enough to be determinative on the issue of a claim's viability. *Id.* Instead, *Moorhouse* held that in order to meet its burden, defendants needed a "case holding that a distributor *cannot* be held liable under any circumstances for failure to warn of the risks of prescription drugs." *Id.* at *10. The court noted that "defendants must do more than observe that the California courts have yet to find a distributor liable for failure to warn in the drug context" and instead must prove "there is no possibility of recovery . . . according to the settled rules of the state." *Id.* Because there was no authority on the issue, the court could not find the claim against McKesson Corporation frivolous. *Id.* at *14. *Moorhouse* concluded that "in light of the general rule under California law that distributors of defective products are strictly liable, the lack of authority exempting distributors from liability for failure to warn in the prescription drug context inclines this Court against a finding of frivolity." *Id.* at *5; *accord, e.g.*, *Bleecher v. Bayer Corp.* (*In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 779 F. Supp. 2d 846 (S.D. Ill. 2010).

In another pharmaceutical product liability action, *Maher v. Novartis*, CASE NO. 07CV852 WQH (JMA), 2007 U.S. Dist. LEXIS 58984 (S.D. Cal. 2007), McKesson was again held to be a proper defendant. *Maher* pointed out that a number of district courts had addressed the issue and concluded "distributor defendants were not fraudulently joined because a distributor could possibly be liable for failure to warn in prescription drug cases under California law." *Id.* at *10. The *Maher* court referred to a Superior Court's refusal to exempt McKesson Corporation from strict liability in a case involving the prescription drug Vioxx. *Id.* at *11 (*citing In re Vioxx Cases*, No. JCCP 4247 "Revised Ruling on Request for Consideration," May 16, 2006). *Maher* quoted *Vioxx*: "Defendants point to no authority that makes an exception to the doctrine of strict liability for distributors in an industry analogous to the prescription pharmaceutical industry. This court will not be the first to make such an exception at the pleading stage." *Maher* at *11.

1    The issue of distributor liability was also addressed in *Aaroe, et al. v. Merck*,
2    CV 05-4073-JFW (MANx), BC 328952, 2005 U.S. Dist. LEXIS 40745 (C.D. Cal.
3    2005), another pharmaceutical products liability action.  In *Aaroe*, defendant Merck,
4    like Defendants in this case, removed the case on the premise that McKesson
5    Corporation was fraudulently joined and its in-state citizenship should be
6    disregarded.  *Id.* at *3.  The *Aaroe* court, like *Maher* and *Moorhouse*, held that
7    Merck "failed to satisfy its heavy burden of demonstrating that there is no
8    possibility" of success in pursuing a claim against McKesson Corporation for failure
9    to warn.  *Id.* at *8.  As such, the court remanded for lack of jurisdiction.

10    Other cases to address the issue of McKesson Corporation's status as a proper
11    defendant in pharmaceutical product liability actions include *Martin v. Merck*, 2005
12    U.S. Dist. LEXIS 41232 (E.D. Cal. 2005), and, *Gallo, et al. v. Bayer, et al.*, CV-09-
13    8211-JFW (C.D. Cal. Nov. 2009).[1]  Both resulted in remand to state court.  In fact,
14    this Court reached a similar conclusion holding that the plaintiffs properly joined
15    McKesson in a pharmaceutical product liability action. *Zachman v. Johnson &*
16    *Johnson*, No. 15-cv-04285-RS, 2015 U.S. Dist. LEXIS 161134, at *14-15 (N.D.
17    Cal. Nov. 30, 2015) (granting remand "[b]ecause entities in the vertical chain of
18    distribution can be held liable for defective products under California law, it is not
19    "obvious" that Zachman's strict liability claim as to McKesson is meritless.");
20    *Bartal v. Astrazeneca Pharms. LP*, No. 5: 12-cv-02548 (PSG) RMW, 2012 U.S.
21    Dist. LEXIS 109215, at *8 (N.D. Cal. Aug. 3, 2012) (citing cases from federal
22    courts in Central, Eastern, and the Southern District of California holding that
23    McKesson was not fraudulently joined in claims against AstraZeneca and
24    McKesson based on products liability).

25    _____

26    [1] The list of cases cited here is merely an example of the cases that rejected the same
27    fraudulent joinder arguments that BMS and Pfizer raise in their removal.

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

Most notably, both Defendants Pfizer and BMS lost this argument in other pharmaceutical product liability cases where McKesson was named as a defendant. *See, e.g., Hatherley v. Pfizer, Inc.*, No. Civ. 2:13-00719 WBS CKD, 2013 U.S. Dist. LEXIS 93943, at *7-8 (E.D. Cal. July 3, 2013) (holding that a strict liability failure-to-warn claim against a pharmaceutical drug distributor remains viable); *Caouette v. Bristol-Myers Squibb Co*., No. C-12-1814 EMC, 2012 U.S. Dist. LEXIS 113980, at *26 (N.D. Cal. Aug. 10, 2012) (holding proper joinder and ordering remand in a pharmaceutical product liability case). In a broader context, other federal courts applying California law have reached a similar conclusion.  In *In re Avandia Mktg.*, 624 F. Supp. 2d at 418-23, for example, the MDL court found that plaintiffs had sufficiently alleged claims against McKesson under California law and pleading requirements (*id.* at 417-18), and rejected GSK's urged extension of the California "learned intermediary" doctrine to defeat remand. *Id.* at 419-20; *Accord In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation,* 2013 WL 6050627, *2 (E.D. Pa., Nov. 14, 2013).

Additionally, California law clearly recognizes that plaintiffs may succeed in an action against a distributor for negligence in a failure to warn case. The California Supreme Court has held that "[n]egligence law in a failure-to-warn case requires plaintiffs to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care." *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1112 (1996).

"In the Ninth Circuit, a non-diverse defendant is deemed fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned."  *Nasrawi v. Buck Consultants, LLC,* 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011) *(*citing *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th Cir. 1989)). Defendants have failed to satisfy their heavy burden of proving by clear and convincing evidence that it is obvious underwell-

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

settled California law that there is no possibility Plaintiff can recover against McKesson. In short, BMS and Pfizer's arguments have already been rejected by other courts, and no attempt to minimize rulings by the Ninth Circuit or other district courts will suffice to overcome the heavy burden to create federal jurisdiction. McKesson has been properly named and is an appropriate defendant. As such, BMS and Pfizer's removal is an unfortunate waste of judicial and counsel's time and resources.

### 2. The Allegations in the Complaint are Sufficient to Meet California's Liberal Pleading Standard

Plaintiff's Complaint satisfies California's liberal pleading standard. A civil complaint filed in California must simply contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." Cal. Civ. Proc. Code § 425.10(a)(1). That rule "require[s] . . . only general allegations of ultimate fact. The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim." *McKell v. Wash. Mut., Inc*., 142 Cal. App. 4th 1457, 1469-70 (2d Dist. 2006).

Although the full extent of McKesson's involvement will be further illuminated as this litigation progresses, the Complaint provides a reasonable and adequate basis for establishing McKesson's participation in the production and distribution of Eliquis. Specifically, Plaintiff's Complaint alleges:

> At all relevant times, McKesson packaged, marketed, distributed, promoted and sold Eliquis in California and in Los Angeles County. Specifically, McKesson promoted and marketed Eliquis through various channels and programs, including but not limited to discount card programs and patient adherence programs

*See* Doc. 1-4 (Compl. ¶ 12). Plaintiff clearly asserts, "[a]t all relevant times, Defendants were in the business of and did design, research, manufacture, test,

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

advertise, promote, market, sell and distribute Eliquis as an oral anticoagulant, also known as a Factor Xa inhibitor." *See* Doc. 1-4 (Compl. ¶ 27.) As this demonstrates, Plaintiff makes clear throughout the Complaint that McKesson, alongside BMS and Pfizer, engaged in wrongful conduct and caused Plaintiff's injuries. For example, Plaintiff alleges McKesson participated in, authorized and directed the production and promotion of Eliquis though it knew or should have known of the increased risk of serious adverse effects. *Id.* (Compl. ¶¶ 51, 56-58, 61(h)-(j)(q), 63, 65, 96-111). Plaintiff further alleges McKesson's wrongful acts, omissions and fraudulent misrepresentations proximately caused Plaintiff's injuries because, had McKesson properly disclosed the risks associated with the drug it distributed, Plaintiff would not have used it and Plaintiff's physician would not have prescribed it. *Id.* (Compl. ¶ 69).

The crux of Defendants' fraudulent joinder complaint is ambiguity in the pleadings because Plaintiff refers collectively to "Defendants" throughout the Complaint; therefore, the allegations as to McKesson are concealed. But ambiguity does not establish fraudulent joinder because any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *Black v. Merck & Co., Inc.,* No. CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, at *7 (C.D. Cal. Mar. 3, 2004). Even though the majority of Plaintiff's allegations were stated as against all "Defendants," these allegations were enough to connect McKesson to Plaintiff's injuries. *See Hatherley,* 2013 U.S. Dist. LEXIS 93943, at *25 (rejecting argument that "plaintiffs' claims against McKesson are inadequate because they are targeted only at 'defendants' generally, rather than McKesson in particular" because the allegation that McKesson distributed the product the plaintiff ingested averred "particular or specific activity" by McKesson)*; see also Mandernach v. Bayer Corp.,* No. 5:09-cv-02306-JHN-OPx, 2010 U.S. Dist. LEXIS 19541, at *5-7 (C.D. Cal. Feb. 8, 2010) (rejecting argument that McKesson was fraudulently joined because the allegations

against it were "lumped together with those against the alleged pharmaceutical manufacturer and include numerous allegations that do not apply to McKesson"); *Aaron v. Merck & Co.,* No. CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, at *5 (C.D. Cal. July 26, 2005) ("Although the remainder of Plaintiffs' allegations are stated against all 'Defendants,' including McKesson, under the liberal pleading requirements, such general allegations against all 'Defendants' are sufficient to charge Defendant McKesson with the alleged wrongful conduct."); *Plute,* 141 F. Supp. 2d at 1010 n.4  ("The allegations forming Plute's retaliation claim are ascribed to 'Defendants,' which was designated as including Shoun and Freel.   Under the liberal pleading requirements, these general allegations are sufficient to charge Shoun and Freel with the alleged wrongful conduct.") (internal citation omitted).

In fact, in materially identical circumstances, cases like this one are routinely remanded for lack of complete diversity. For example, plaintiffs in *In re Avandia Marketing Sales Practices and Prods. Liab. Litig.,* 624 F. Supp. 2d at 417, made allegations similar to the instant case and the court found no fraudulent joinder.  The *Avandia* complaint, like the Complaint in the case at bar, alleged:

> At all times relevant to this action, Defendant McKesson packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted, and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Avandia.

*Id.*  Because the case was originally filed in California, the *Avandia* court measured the adequacy of this allegation according to California's liberal pleading standard. California requires only "[a] statement of the facts constituting the cause of action, in ordinary and concise language" and a pleading will be "adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim."  *Id.*  The *Avandia* court found the allegation that McKesson purported to warn consumers of

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Avandia's risks in the course of marketing and distributing the drug sufficient to meet California's permissive standard. *Id.*  As a result, the court found McKesson Corporation properly joined and remanded.

Besides, Defendants must do more than show that the Complaint at the time of removal fails to state a claim against the non-diverse defendant. *Nasrawi,* 776 F. Supp. 2d at 1170.  "Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [any] purported deficiency.'"  *Id.* (citation omitted); *accord Padilla v. AT&T Corp.,* 697 F. Supp. 2d 1156, 1159-60 (C.D. Cal. 2009); *Burris v. AT&T Wireless, Inc.,* No. C 06-02904 JSW, 2006 U.S. Dist. LEXIS 52437, at *3 (N.D. Cal. July 19, 2006). Remand is required here because Defendants make no such showing in their Notice of Removal that an amendment to the pleading could not cure the alleged deficiencies. This they cannot do since, as argued above, California holds distributors liable under a strict liability theory.

Plaintiff's allegations are sufficient to state a reasonable basis in fact, as well as colorable legal ground, supporting McKesson's liability as a nationwide distributor in the chain of distribution of Eliquis. Nothing more is required of Plaintiff at this stage. *In re Avandia*, 624 F. Supp. 2d at 418; *accord A.S. v. Pfizer, Inc.,* No. 1:13-cv-00524 - LJO - JLT, 2013 U.S. Dist. LEXIS 76307, at *28-29 (E.D. Cal. May 29, 2013) ("Plaintiff has not only asserted that McKesson is a major distributor of Effexor, but has alleged also that 'Plaintiff is informed and believes Defendant McKesson distributed the Effexor that was dispensed to [Plaintiff]."); *Oliver v. McNeil-PPC, Inc.*, No. 1:12-cv-01865-AWI-SAB, 2013 U.S. Dist. LEXIS 14959, at *16 (E.D. Cal. Feb. 1, 2013) ("While defendants argue that the allegations in the complaint are too bare to state a claim that Defendant McKesson distributed the medication at issue in this action, they do not show by clear and convincing evidence that the failure is obvious according to the settled rules of the state.").

/ / /

### D.      Removal Violates the Forum Defendant Rule

Defendants seeking to remove must comply with certain procedural mandates. Section 1441(b)(2) of Title 28 of the United States Code sets out the "forum defendant rule":

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Therefore, "the presence of a local defendant at the time removal is sought bars removal." *Spencer v. U.S. Dist. Ct. N.D. Cal. (Altec Indus., Inc.)*, 393 F.3d 867, 870 (9th Cir. 2004). This "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively v. Wild Oats Markets, Inc.,* 456 F.3d 933, 939 (9th Cir. 2006). Violations of the forum defendant rule constitute a defect to removal. *Id.*

In accordance with the forum defendant rule, as applied in the Ninth Circuit cases discussed above, removal is procedurally defective because McKesson is a citizen of the forum state, California, and as shown above, McKesson is not fraudulently joined. Therefore, diversity does not exist and this case should be remanded to state court.

### E.      Defendants' Argument that McKesson is Not a Necessary and Indispensable Party is Without Merit

Recognizing that their fraudulent joinder argument has been repeatedly rejected by this Court and other federal courts in California and throughout the United States, Defendants argue that the Court should exercise its discretion and sever McKesson to manufacture diversity jurisdiction pursuant to Rule 21 of the Federal Rules of Civil Procedure. Defendants argue that McKesson is not required to be joined to this proceeding pursuant to Rule 19 of the Federal Rules of Civil Procedure. Rule 19 –

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Required Joinder of Parties— provides, in pertinent part, that a party must be joined if:

> **(A)**   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)**   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest;
>>
>> or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Proc. 19(a). Courts turn to the factors set forth in Rule 19(b) to determine if a party is required to be joined. *Sams v. Beech Aircraft Corp.,* 625 F. 2d 273, 278 (9th Cir. 1980). Under that test, the Court is to determine whether, in equity and good conscience, the action against McKesson should proceed among the existing parties weighing the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties, whether a judgment rendered in the person's absence would be adequate; and whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. Proc. 19(b).

Strict products liability is analogous to vicarious liability in that strict product liability tort law places direct liability on a defendant in the chain of distribution regardless of whether the distributor acted negligently. *Bostick.,* 147 Cal. App. 4th at 94. A decision to sever McKesson solely for purposes of manufacturing diversity would result in a separate proceeding in a different court related to the exact same issues, including proving liability against BMS and Pfizer for negligence, defective design, and failure to warn as it relates to the dangerous, defective drug Eliquis.

Granting severance and requiring Plaintiff to litigate the exact same strict product liability issues in a separate proceeding against McKesson in California state court would be an impractical waste of judicial resources, and would unfairly prejudice Plaintiff.   *Id.; See also Sanchez v. Sears Roebuck & Co.,* No. C-97-0105 SC, 1997 U.S. Dist. LEXIS 6003, at *9 (N.D. Cal. May 2, 1997) (holding that "forcing this action to be split into two separate actions in two courts is an unnecessary waste of time, energy and effort, and would be an undue burden to both" plaintiff and the individual defendants).

As BMS and Pfizer acknowledge, the Court has discretion in determining whether to sever a non-diverse party. But that discretion should be exercised sparingly after careful consideration of whether such a dismissal will prejudice any of the parties in the litigation." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837-38, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989). This Court, as Judge Battaglia did in *Kelly v. Amylin Pharms., LLC,* No. 14cv1086 AJB (MDD), 2014 U.S. Dist. LEXIS 153117, at *24 (S.D. Cal. Aug. 8, 2014), should decline to sever McKesson because doing so would "result in another tier of proceedings" regarding the pharmaceutical drug produced and/or distributed by Defendants.

Additionally, McKesson, as an entity in the distribution chain and BMS and Pfizer's agent, is an indispensable party to this litigation. "Indispensable parties under Rule 19(b) are persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *EEOC v. Peabody W. Coal Co.,* 400 F.3d 774, 780 (9th Cir.2005). "Whether a party is indispensable involves a practical, fact-specific inquiry designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d 1150, 1154 (9th Cir. 2002).

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

Plaintiff specifically alleges that Defendants, either directly or through their agents, apparent agents, or employees at all relevant times, sold and distributed Eliquis. *See* Doc. 1-4 (Compl. ¶ 21). And Defendants, at all relevant times, were in the business of and did research, manufacture, test, advertise, promote, market, sell, and distribute Eliquis as an oral anticoagulant known as a Factor Xa inhibitor. *Id.* (Compl. ¶ 27).  The Complaint further identifies McKesson's role as the marketer, distributor, promotor, and seller of Eliquis through various channels and programs, including discount card programs and patient adherence programs. *Id.* (Compl. ¶ 12).  Plaintiff describes the Defendants as acting in furtherance of a conspiracy and concerted action in their scheme to promote Eliquis and mislead the medical community, including Plaintiff, regarding the safety and efficacy of Eliquis. *Id.* (Compl. ¶ 156). Plaintiff specifically seeks punitive damages against all three Defendants. *Id.* (Compl. ¶¶ 95, 155-160).

If McKesson is not joined as a defendant in this action, Plaintiff will not be afforded complete relief because Plaintiff would only be able to recover damages from BMS and Pfizer.  Moreover, because Plaintiff sets out a cause of action for punitive damages and alleges that Defendants acted as joint tortfeasors and co-conspirators, Plaintiff could not collect any punitive damage award as to McKesson if McKesson were severed. *See Sanchez*, 1997 U.S. Dist. LEXIS 6003, at *8; *also see Diaz v. Allstate Ins. Group,* 185 F.R.D. 581, 595 (C.D. CA 1998) (remanding to state court when complaint alleged conspiracy against Allstate's independent contractors). Thus, McKesson is not indispensable wherein Plaintiff specifically alleges that McKesson provided the Eliquis pills ingested by Plaintiff.  Doc. 1-4 (Compl. ¶ 14).

## IV.   CONCLUSION

Because the Complaint states cognizable claims against McKesson Corporation, it is a properly joined defendant. As such, there is no diversity jurisdiction. For all the foregoing reasons, Plaintiff respectfully request that the

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO REMAND TO STATE COURT

1  Court grant the Motion to Remand to the Superior Court of California for the
2  County of Los Angeles.

3

4  DATED: November 8, 2016          Respectfully submitted,

5                                   **KIESEL LAW LLP**

6

7

8                                   By:      */s/ Helen Zukin*
9                                            Paul R. Kiesel
                                             Helen Zukin
10
11                                           **SALIM-BEASLEY, LLC**
                                             Barrett L. Beasley
12
13                                           Attorneys for Plaintiff
                                             Dolores Williams
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S NOTICE OF MOTION AND
                                                                MOTION TO REMAND TO STATE COURT

**<u>DECLARATION OF HELEN ZUKIN</u>**

I, Helen Zukin, hereby declare as follows:

1.     I am an attorney at law, duly licensed to practice before all Courts of the State of California and the United States District Courts for the Northern, Southern, Central, and Eastern Districts of California. I am a partner with Kiesel Law LLP, counsel for Plaintiff in this action. This Declaration is offered in support of Plaintiff's Motion for Remand. If called as a witness I could and would competently testify to the following based on personal knowledge:

2.     Attached hereto as Exhibit "A" is a true and correct copy of the Petition for Coordination filed with the Judicial Council of California on October 20, 2016 (without exhibits).

3.     Attached hereto as Exhibit "B" is a true and correct copy of a print out of the McKesson website http://www.mckesson.com/manufacturers/commercial-services/, printed on October 26, 2016.

4.     Attached hereto as Exhibit "C" is a true and correct copy of McKesson's Eliquis Coupon, printed from https://www.eliquis.com/eliquis/patient-offers-resources on November 8, 2016.

5.     Attached hereto as Exhibit "D" is a true and correct copy of a print out of McKesson's Rebate website https://www.patientrebateonline.com/patientrebate/welcome.html, printed on October 28, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 8, 2016, at Beverly Hills, California.

_____
Helen Zukin

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

DECLARATION OF HELEN ZUKIN IN
SUPPORT THREEOF

# EXHIBIT A

RECEIVED

OCT 2 0 2016

JUDICIAL COUNCIL OF CALIFORNIA

BY *Katherine Sturdy (b.e.)*

COORDINATION ATTORNEY

1   Paul R. Kiesel, State Bar No. 119854
    *kiesel@kiesel.law*
2   Helen Zukin, State Bar No. 117933
    *zukin@kiesel.law*
3   Melanie Palmer, State Bar No. 286752
    *palmer@kiesel.law*
4   **KIESEL LAW LLP**
    8648 Wilshire Boulevard
5   Beverly Hills, California 90211-2910
    Tel:    310-854-4444
6   Fax:    310-854-0812

7   Barrett L. Beasley, State Bar No. 194143
    *bbeasley@salim-beasley.com*
8   Robert L. Salim [*Pro Hac Vice* Pending]
    *robertsalim@cp-tel.net*
9   Lisa Causey-Streete [*Pro Hac Vice* Pending]
    *lcausey@salim-beasley.com*
10  **SALIM-BEASLEY, LLC**
    1901 Texas Street
11  Natchitoches, Louisiana 71457
    Tel:    (318) 352-5999
12  Fax:    (318) 352-5998

13  Attorneys for Plaintiffs and Petitioners

14

15              **JUDICIAL COUNCIL OF CALIFORNIA**

16              **CHAIR OF THE JUDICIAL COUNCIL**

17

18  BONNIE MCINTOSH,                      JCCP No. **4899**

19          Plaintiff and Petitioner,     Santa Cruz County Superior Court
                                          Case No. 16CV02437
        v.
20                                        **PETITION FOR COORDINATION AND**
    MCKESSON CORPORATION, et al.,         **REQUEST FOR STAY OF ALL**
21                                        **INCLUDED ACTIONS**
            Defendants and Respondents.
22                                        [*Filed concurrently with Memorandum of*
                                          *Points and Authorities, and Declaration of*
23                                        *Helen Zukin*]

24                                        San Diego County Superior Court
    RICHARD FONGER, et al.,               Case No. 37-2016-00034957-CU-PL-NC
25
            Plaintiffs and Petitioner,
26  v.

27  MCKESSON CORPORATION, et al.,

28          Defendants and Respondents.

    _____
    **PETITION FOR COORDINATION AND REQUEST FOR STAY OF ALL INCLUDED ACTIONS**

| | |
|---|---|
| GABRIEL DELLUTRI, | Los Angeles County Superior Court |
| | Case No. BC636969 |
| Plaintiff and Petitioner, | |
| v. | |
| MCKESSON CORPORATION, et al., | |
| Defendants and Respondents. | |

| | |
|---|---|
| OZRA LEBASTCHI, | Los Angeles County Superior Court |
| | Case No. BC637075 |
| Plaintiff and Petitioner, | |
| v. | |
| MCKESSON CORPORATION, et al., | |
| Defendants and Respondents. | |

| | |
|---|---|
| DOLORES WILLIAMS, | Los Angeles County Superior Court |
| | Case No. BC637219 |
| Plaintiff and Petitioner, | |
| v. | |
| MCKESSON CORPORATION, et al., | |
| Defendants and Respondents. | |

| | |
|---|---|
| JUDY HAYES, | Riverside County Superior Court |
| | Case No. RIC 1613388 |
| Plaintiff and Petitioner, | |
| v. | |
| MCKESSON CORPORATION, et al., | |
| Defendants and Respondents. | |

| | |
|---|---|
| FLORENCE QUARG, | San Diego County Superior Court |
| | Case No. 37-2016-00035743-CU-PL-CTL |
| Plaintiff and Petitioner, | |
| v. | |
| MCKESSON CORPORATION, et al., | |
| Defendants and Respondents. | |

| | |
|---|---|
| NORMA STUART, | Orange County Superior Court |
| | Case No. 30-2016-00880347-CU-PL-CXC |
| Plaintiff and Petitioner, | |
| v. | |

1  MCKESSON CORPORATION, et al.,

2                 Defendants and Respondents.

3  _____

4  RANDALL CROSBY,                                    Mendocino County Superior Court
                                                       Case No. SCUK-CVPO-2016-68260
5                 Plaintiff and Petitioner,
   v.
6  MCKESSON CORPORATION, et al.,

7                 Defendants and Respondents.

8

9  TO THE CHAIR OF THE JUDICIAL COUNCIL, THE PARTIES TO THE ACTIONS, AND

10 THEIR COUNSEL OF RECORD:

11         PLEASE TAKE NOTICE that, pursuant to the California Code of Civil Procedure section

12 404, *et seq*., and California Rules of Court 3.500, *et seq*., Plaintiffs and Petitioners, Bonnie

13 McIntosh, Richard Fonger and Jean Kelley, Gabriel Dellutri, Ozra Lebastchi, Dolores Williams,

14 Judy Hayes, Florence Quarg, Norma Stuart, and Randall Crosby, by and through their counsel,

15 hereby submit this Petition to the Chair of the Judicial Council to coordinate the actions listed

16 below for all pretrial purposes only.

17         PLEASE TAKE FURTHER NOTICE that any written opposition or response to the herein

18 Petition must be filed and served at least nine (9) court days before the hearing date set on this

19 Petition. A hearing on this Petition is hereby requested.

20         All of the proposed included actions involve allegations that Defendants McKesson

21 Corporation, Bristol-Myers Squibb Company, Pfizer Inc., and Does 1 through 100, inclusive,

22 designed, developed, manufactured, marketed, advertised, promoted, distributed, and sold either

23 directly or indirectly through third parties or related entities, products known as Eliquis, also

24 known as apixaban, throughout the State of California for treatment of stroke and systemic

25 embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of deep

26 vein thrombosis (DVT) and pulmonary embolism (PE), and for prophylaxis of DVT for patients

27 undergoing hip and knee replacement surgery.  Plaintiffs and Petitioners herein are individual

28 consumers who suffered damages as a result of use of Eliquis as a result of internal bleeding and

related sequelae. Petitioners seek to coordinate the cases listed below for pretrial purposes only, as well as similar cases filed in the State of California that constitute the subject of this Petition:

a)     *Mariano Aguirre, et al. v. McKesson Corporation, et al*., Los Angeles County Superior Court Case No. BC633591 (filed 09/09/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;[1]

b)     *Bonnie McIntosh v. McKesson Corporation, et al*., Santa Cruz County Superior Court Case No. 16CV02437 (filed 09/21/2016), assigned to Hon. Paul Burdick – Department 5; Santa Cruz County Superior Court, Santa Cruz Courthouse;

c)     *Richard Fonger, et al. v. McKesson Corporation, et al*., San Diego County Superior Court Case No. 37-2016-00034957-CU-PL-NC (filed 10/05/2016), assigned to Hon. Robert P. Dahlquist – Department N-29; San Diego County Superior Court, North County Vista;

d)     *Gabriel Dellutri v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC636969 (filed 10/12/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;

e)     *Ozra Lebastchi v. McKesson Corporation, et al*., Los Angeles County Superior Court Case No. BC637075 (filed 10/12/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;

f)     *Dolores Williams v. McKesson Corporation, et al*., Los Angeles County Superior Court Case No. BC637219 (filed 10/12/2016), assigned to Hon. Steven J. Kleifield – Department

---

[1] This case was filed on behalf of the plaintiffs by Michael Louis Kelly of Kirtland & Packard LLP. While they are not named petitioners herein, they are in favor of submitting this petition for coordination to the Chairperson of the Judicial Council. Additionally, Kirtland & Packard filed *Charlene Little, et al. v. McKesson Corporation, et al*., San Diego County Superior Court Case No. 37-2016-00018332-CU-MT-CTL on May 31, 2016. However, that case has been removed to the U.S. District Court for the Southern District of California. Plaintiffs' motion to remand, filed September 23, 2016, has not been ruled upon yet.

324; Los Angeles County Superior Court, Central Civil West Courthouse;

g)    *Judy Hayes v. McKesson Corporation, et al.*, Riverside County Superior Court Case No. RIC1613388 (filed 10/12/2016), assigned to Hon. Craig G. Riemer – Department 5; Riverside County Superior Court;

h)    *Florence Quarg v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00035743-CU-PL-CTL (filed 10/12/2016), assigned to Hon. Ronald L. Styn – Department C-62; San Diego County Superior Court, Central Courthouse;

i)    *Norma Stuart v. McKesson Corporation, et al.*, Orange County Superior Court Case No. 30-2016-00880347-CU-PL-CXC (filed 10/11/2016), assigned to Hon. Kim G. Dunning – Department CX104; Orange County Superior Court, Civil Complex Center;

j)    *Randall Crosby v. McKesson Corporation, et al.*, Mendocino County Superior Court Case No. SCUK-CVPO-2016-68260 (filed 10/17/2016), assigned to Hon. Jeanine Nadel – Department E; Mendocino County Superior Court, Mendocino County Courthouse.

Petitioners are unaware of any other actions filed in California state court that share common questions of law or fact. Petitioners respectfully request that the Los Angeles County Superior Court Complex Civil Panel be assigned to determine whether coordination of these actions is appropriate.

This Petition is made pursuant to Section 404 of the California Code of Civil Procedure and Rule 3.521 of the California Rules of Court on the ground that one judge hearing all actions for all pretrial purposes only in the Superior Court for the County of Los Angeles will promote the ends of justice for the following reasons:

- All of the cases allege identical or virtually identical legal and factual theories, are based upon similar events and thus have many of the same issues of fact and law;

- The cases involve the same defendants that will presumably be represented by the same counsel;

- Coordination will further the efficient utilization of judicial resources and avoid the

5

1      unnecessary duplication and waste o judicial resources;

2        •   Coordination will further the convenience of the parties, witnesses and counsel;

3        •   Coordination will avoid duplicative or inconsistent rulings and orders; and

4        •   Coordination will increase the possibility of settlement of disputed matters.

5      Satisfaction of such grounds is more particularly set forth in the accompanying Declaration

6 of Helen Zukin, the Memorandum of Points and Authorities, and other supporting documents

7 submitted herewith. The actions sought to be coordinated fall within the definition of "complex

8 litigation" under Section 19 of the Standards of Judicial Administration and Rule 3.400, *et seq.*, of

9 the California Rules of Court.

10      Proof of filing in each included action of the Notice of Submission of Petition for

11 Coordination and a Copy of the Petition pursuant to Rule 3.522 of the California Rules of Court,

12 and any documents to be submitted pursuant to Rule 3.523 of the California Rules of Court will be

13 submitted to the Chair of the Judicial Council within the time frames provided by Rules 3.522 and

14 3.523.

15

16 DATED: October 19, 2016         Respectfully submitted,

17                 **KIESEL LAW LLP**

18

19              By: _____

20                 Paul R. Kiesel

                 Helen Zukin

21                 Melanie Palmer

22                 **SALIM-BEASLEY, LLC**

23                 Barrett Beasley

                 Robert L. Salim

24                 Lisa Causey-Streete

25                 Attorneys for Plaintiffs and Petitioners

26

27

28

RECEIVED

OCT 20 2016

JUDICIAL COUNCIL OF CALIFORNIA

BY _Katherine Sher_

COORDINATION ATTORNEY

1   Paul R. Kiesel, State Bar No. 119854
       *kiesel@kiesel.law*
2   Helen Zukin, State Bar No. 117933
       *zukin@kiesel.law*
3   Melanie Palmer, State Bar No. 286752
       *palmer@kiesel.law*
4   **KIESEL LAW LLP**
    8648 Wilshire Boulevard
5   Beverly Hills, California 90211-2910
    Tel:    310-854-4444
6   Fax:   310-854-0812

7   Barrett L. Beasley, State Bar No. 194143
       *bbeasley@salim-beasley.com*
8   Robert L. Salim [*Pro Hac Vice* Pending]
       *robertsalim@cp-tel.net*
9   Lisa Causey-Streete [*Pro Hac Vice* Pending]
       *lcausey@salim-beasley.com*
10  **SALIM-BEASLEY, LLC**
    1901 Texas Street
11  Natchitoches, Louisiana 71457
    Tel:    (318) 352-5999
12  Fax:   (318) 352-5998

13  Attorneys for Plaintiffs and Petitioners

14

15              **JUDICIAL COUNCIL OF CALIFORNIA**

16          **CHAIR OF THE JUDICIAL COUNCIL**

17  BONNIE MCINTOSH,                      JCCP No. **4899**

18          Plaintiff and Petitioner,   Santa Cruz County Superior Court
                                        Case No. 16CV02437
19          v.

20  MCKESSON CORPORATION, et al.,    **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF
21          Defendants and Respondents.   PETITION FOR COORDINATION AND
                                          REQUEST FOR STAY**

22                                      [*Filed concurrently with Petition for
                                        Coordination and Request for Stay, and
23                                      Declaration of Helen Zukin*]

24  RICHARD FONGER, et al.,           San Diego County Superior Court
                                      Case No. 37-2016-00034957-CU-PL-NC
25          Plaintiffs and Petitioner,

26          v.

27  MCKESSON CORPORATION, et al.,

28          Defendants and Respondents.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR COORDINATION**

| | |
|---|---|
| GABRIEL DELLUTRI,<br><br>               Plaintiff and Petitioner,<br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>               Defendants and Respondents. | Los Angeles County Superior Court<br>Case No. BC636969 |
| OZRA LEBASTCHI,<br><br>               Plaintiff and Petitioner,<br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>               Defendants and Respondents. | Los Angeles County Superior Court<br>Case No. BC637075 |
| DOLORES WILLIAMS,<br><br>               Plaintiff and Petitioner,<br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>               Defendants and Respondents. | Los Angeles County Superior Court<br>Case No. BC637219 |
| JUDY HAYES,<br><br>               Plaintiff and Petitioner,<br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>               Defendants and Respondents. | Riverside County Superior Court<br>Case No. RIC 1613388 |
| FLORENCE QUARG,<br><br>               Plaintiff and Petitioner,<br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>               Defendants and Respondents. | San Diego County Superior Court<br>Case No. 37-2016-00035743-CU-PL-CTL |
| NORMA STUART,<br><br>               Plaintiff and Petitioner,<br>v. | Orange County Superior Court<br>Case No. 30-2016-00880347-CU-PL-CXC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR COORDINATION**

1  MCKESSON CORPORATION, et al.,

2      Defendants and Respondents.

3  _____

4  RANDALL CROSBY,                          Mendocino County Superior Court
                                            Case No. SCUK-CVPO-2016-68260

5      Plaintiff and Petitioner,

5  v.

6  MCKESSON CORPORATION, et al.,

7      Defendants and Respondents.

8

9      **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

10     **PETITION FOR COORDINATION AND REQUEST FOR STAY**

11  **I.   INTRODUCTION**

12      California law authorizes the coordination of complex cases pending in different courts

13  whenever they share a common question of law or fact.  Civ. Proc. Code § 404.  The statute

14  provides for the coordination of these types of cases in order to promote the efficient use of

15  judicial resources.  *Id.*  Here, the actions sought to be coordinated each allege similar product

16  liability and negligence claims against the same Defendants for injuries arising out of Eliquis, also

17  known as apixaban, a pharmaceutical product used to treat stroke and systemic embolism in

18  patients with non-valvular atrial fibrillation, and reduce the risk of deep vein thrombosis (DVT)

19  and pulmonary embolism (PE).  Plaintiffs allege internal bleeding injuries.

20      Coordination of the Eliquis Product Liability Actions "will promote the ends of justice" as

21  required under Code Civ. Proc. § 404 and 404.1. The included cases involve common questions of

22  fact or law against the same group of defendants.  Coordination will further save the courts and the

23  parties significant resources by avoiding duplicative motions and discovery and prevent the risk of

24  inconsistent rulings.  Additionally, the parties will not burden multiple courts of this State with the

25  task of presiding over similar efforts by plaintiffs to recover for alleged injuries caused by the

26  ingestion of Eliquis. Petitioners seek to coordinate the cases listed below for pretrial purposes

27  only, as well as similar cases filed in the State of California that constitute the subject of this

28  Petition:

a) *Mariano Aguirre, et al. v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC633591 (filed 09/09/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;[1]

b) *Bonnie McIntosh v. McKesson Corporation, et al.*, Santa Cruz County Superior Court Case No. 16CV02437 (filed 09/21/2016), assigned to Hon. Paul Burdick – Department 5; Santa Cruz County Superior Court, Santa Cruz Courthouse;

c) *Richard Fonger, et al. v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00034957-CU-PL-NC (filed 10/05/2016), assigned to Hon. Robert P. Dahlquist – Department N-29; San Diego County Superior Court, North County Vista;

d) *Gabriel Dellutri v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC636969 (filed 10/12/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;

e) *Ozra Lebastchi v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC637075 (filed 10/12/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;

f) *Dolores Williams v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC637219 (filed 10/12/2016), assigned to Hon. Steven J. Kleifield – Department 324; Los Angeles County Superior Court, Central Civil West Courthouse;

g) *Judy Hayes v. McKesson Corporation, et al.*, Riverside County Superior Court Case No. RIC1613388 (filed 10/12/2016), assigned to Hon. Craig G. Riemer – Department 5; Riverside County Superior Court;

h) *Florence Quarg v. McKesson Corporation, et al.*, San Diego County Superior

---

[1] This case was filed on behalf of the plaintiffs by Michael Louis Kelly of Kirtland & Packard LLP. While they are not named petitioners herein, they are in favor of submitting this petition for coordination to the Chairperson of the Judicial Council. Additionally, Kirtland & Packard filed *Charlene Little, et al. v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00018332-CU-MT-CTL on May 31, 2016. However, that case has been removed to the U.S. District Court for the Southern District of California. Plaintiffs' motion to remand, filed September 23, 2016, has not been ruled upon yet.

1  Court Case No. 37-2016-00035743-CU-PL-CTL (filed 10/12/2016), assigned to Hon. Ronald L.

2  Styn – Department C-62; San Diego County Superior Court, Central Courthouse;

3        i)      *Norma Stuart v. McKesson Corporation, et al.*, Orange County Superior Court

4  Case No. 30-2016-00880347-CU-PL-CXC (filed 10/11/2016), assigned to Hon. Kim G. Dunning

5  – Department CX104; Orange County Superior Court, Civil Complex Center;

6        j)      *Randall Crosby v. McKesson Corporation, et al.*, Mendocino County Superior

7  Court Case No. SCUK-CVPO-2016-68260 (filed 10/17/2016), assigned to Hon. Jeanine Nadel –

8  Department E; Mendocino County Superior Court, Mendocino County Courthouse.

9        Plaintiffs and Petitioners are currently finalizing service of process of all summons and

10  complaints on Defendants and Respondents, McKesson, Bristol-Myers Squibb, and Pfizer.

11  **II.      WHEN PETITION MAY BE MADE**

12        When civil actions sharing a common question of fact or law are pending in different

13  courts, all the parties plaintiff, in any one of the actions may submit a Petition for Coordination to

14  the Chair of the Judicial Council, who on receiving the Petition may assign a judge to determine

15  whether the actions are complex, and if so, whether coordination of the actions is appropriate

16  (Code Civ. Proc. § 404; Cal. Rules of Ct., Rules 3.520(b), 3.521(a)).

17        Coordination promotes "judicial efficiency and economy by providing for the unified

18  management" of the coordinated cases. *Citigroup North Am., Inc. v. Superior Court* (1989) 213

19  Cal. App. 3d 563, 565, fn.3.  Code Civ. Proc. § 404 governs the method for coordination when

20  complex cases share a common question of law or fact.

21        Coordination should be ordered when its benefits outweigh potential complications or

22  problems. *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal. App. 4th 804, 812-813, 14

23  Cal. Rptr. 2d 264. The judge has discretion in weighing and balancing the factors to determine

24  whether coordination best serves the ends of justice in a particular case. The judge's discretion is

25  not abused if there is evidence to support the existence of many factors favoring the judge's

26  decision. *Pesses v. Superior Court* (1980) 107 Cal. App. 3d 117, 126, 165 Cal. Rptr. 680.

27        Coordination is proper when two requirements are met: (1) the actions are "complex" as

28  defined by the Judicial Council, and (2) the actions meet the coordination criteria set forth in Code

Civ. Proc. § 404.1.

## III.     THE ELIQUIS PRODUCT LIABILITY ACTIONS ARE COMPLEX

The court must consider California Rules of Court, Rule 3.400 *et seq.* in determining whether a case is complex within the meaning of Code Civ. Proc. § 404 (Cal. Rules of Ct., Rule 3.502). Under California Rules of Court, Rule 3.400(a), a complex case is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel. The actions sought to be coordinated here are complex actions within this definition so as to allow their coordination under Code of Civil Procedure Section 404. The included actions will involve numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; management of a large number of witnesses and a substantial amount of documentary evidence; management of a large number of separately represented parties; and potential coordination with related actions pending in federal court. Furthermore, the included actions are provisionally complex under California Rules of Court Section 3.400(b) because they involve mass torts.

## IV.     COORDINATION IS NECESSARY AND APPROPRIATE TO EFFECTUATE THE PURPOSES OF COORDINATION AND WILL PROMOTE THE ENDS OF JUSTICE

Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice, taking into account the following factors (Code Civ. Proc. § 404.1):

(1)     whether the common question of fact or law is predominating and significant to the litigation;

(2)     the convenience of parties, witnesses, and counsel;

(3)     the relative development of the actions and the work product of counsel;

(4)     the efficient utilization of judicial facilities and manpower;

(5)     the calendar of the courts;

(6)     the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and

6

(7)     the likelihood of settlement of the actions without further litigation should
coordination be denied.

This Petition is made on the grounds that the Eliquis Product Liability Actions share common questions of law and fact, and coordination will promote the ends of justice as required by Code Civ. Proc. § 404.1 and 404.4 for the following reasons:

- The included actions require resolution of similar or even identical factual and legal issues;

- Coordination will further the convenience of the parties, witnesses, and counsel;

- All of the named defendants in any one included action are common to all included actions;

- Defense counsel for Defendants will likely be the same counsel of record in each of the included actions;

- With the exception of *Charlene Little, et al., v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00018332-CU-MT-CTL, where Defendants have recently responded to the complaints by a Notice of Removal, to the best of Petitioners' knowledge, no answers have yet been filed in the 10 actions subject to this Petition, and discovery has yet to be served.  In several of these cases, to the best of Petitioners' knowledge, Defendants' counsel have yet to make an appearance.

- Coordination will further the efficient utilization of judicial resources; and

- Coordination will avoid the disadvantages of duplicative and potentially inconsistent rulings and orders.

**A.     The Cases Involve Common Questions of Fact and Law That Predominate and Are Significant to the Litigation.**

Each of the actions sought to be coordinated were filed on or after May 31, 2016.  The Eliquis Product Liability Actions each involve a dispute as to whether Eliquis was dangerous and defective. The included actions allege that Defendants negligently and intentionally represented

7

1   that Eliquis had been tested and was found to be safe and effective for its indicated uses. These

2   representations were made with the intent to deceive and with the intent of inducing the purchase

3   of Eliquis.

4     Defendants concealed their knowledge of Eliquis' defects and risk, and caused Plaintiffs

5   and Petitioners serious and even fatal side effects as a result of internal bleeding. The dispute is

6   essentially the same for each of the included actions with some variance as to theories of liability

7   and prayers for relief.  Each of the included actions necessarily involve a court's interpretation and

8   application of a similar set of California laws.

9     **B.**  **Coordination Will Promote The Efficient Use of Judicial Resources And Will Advance The Convenience of the Parties, Witnesses, and Counsel.**

10

11     Coordination of the included actions will promote the efficient use of judicial and parties'

12   resources and will accommodate the convenience of all counsel by preventing the duplication of

13   effort and the costly adjudication of the same or substantially similar motions, such as demurrers,

14   judgment on the pleadings and motions for summary judgment. Coordination will also avoid

15   duplicative discovery. Each included action involves the same defendants. Many witnesses, factual

16   and expert, are likely to be the same in all of these cases. Thus, coordination will also advance the

17   potential witnesses by avoiding duplicative depositions. Coordination will also advance the

18   convenience of counsel by conserving their resources through cooperative discovery that will

19   benefit all parties and the court in the form of cost savings. Further, it is anticipated that additional

20   plaintiffs will likely be filing in Los Angeles County. Thus, because Los Angeles County is the

21   venue for the most plaintiffs, discovery proceedings would be facilitated by coordination in Los

22   Angeles County. "The preparation for trial in terms of depositions, interrogatories, admissions …

23   etc., will be better achieved if done in a coordinated manner." *McGhan Med. Corp. v. Superior*

24   *Court* (1992) 11 Cal. App. 4th 804, 814.

25     **C.**  **Coordination will alleviate the burden on the Courts.**

26     The Eliquis Product Liability Actions are pending in the Superior Court of California, but

27   in different Counties. Coordination will lessen the burden on the judicial system by avoiding

28   adjudication of the same or similar issues multiple times.  The cases involve claims arising from

the same conduct by the same defendants – the design and manufacture of a defective pharmaceutical product. Since motion practice, document discovery, depositions of witnesses, and other aspects of litigation will follow a similar course of conduct, coordination will alleviate the burden on the courts from needlessly adjudicating the same types of motions and issues.

**D. Refusal to Coordinate May Result in Duplicative and Potentially Inconsistent Rulings.**

The included cases will involve significant motion practice. Coordination will ensure uniform and consistent rulings. By contrast, allowing these cases to proceed independently will result in various courts determining the same factual issues on the same types of motions. A single court should resolve such issues.

**E. Settlement is Unlikely Without Coordination**

Finally, without coordination, settlement is unlikely. The primary motivators driving the settlement of cases, generally, are eliminating further litigation, avoiding the risk of an adverse judgment, and avoiding additional litigation costs. The incentive to settle any of the included actions is greatly reduced without coordination. Settlement of one case may not end the litigation of the others, leaving Defendants with a continued risk of adverse judgment and substantial litigation costs. A realistic possibility of settlement would only arise if Defendants are able to settle these claims in a coordinated action.

**V. THE CENTRAL CIVIL WEST COURTHOUSE OF THE LOS ANGELES COUNTY SUPERIOR COURT IS THE APPROPRIATE LOCATION FOR ASSIGNMENT OF THE COORDINATED STATE PROCEEDING**

Petitioner requests that the Chair of the Judicial Commission select the Central Civil West Courthouse ("CCW") of the Los Angeles County Superior Court as the location for assignment of the one judge to preside over the coordinated proceeding. With the existence of a complex case panel, Central Civil West hears complex litigation cases assigned from throughout Los Angeles County and the State of California. The CCW judges have exceptional experience presiding over coordinated proceedings, including, to name a few, the Yaz, Avandia, transvaginal mesh, Johnson & Johnson Talcum Powder, and Wright Medical Hip product liability JCCPs. Additionally, Los Angeles County is the county where the most Eliquis cases are pending.

## VI.   ISSUING A STAY PENDING DETERMINATION OF THIS PETITION WILL PROMOTE THE OBJECTIVES OF COORDINATION

Petitioners also move to stay the included actions while the Court decides whether they should be coordinated and, if so, where. Such a stay is expressly authorized by California Code of Civil Procedure section 404.5 and California Rule of Court 3.515 and would cover only an interim period while a decision on the Petition is pending. If this Court grants the Coordination Petition, the coordinated cases are automatically stayed by Rule of Court 3.529(b) so that one judge can be selected and assume control over the cases. The interim stay that Petitioners seek is appropriate to effectuate the purposes of coordination, including the efficient utilization of judicial facilities and man power, the avoidance of inconsistent rulings and orders, and the convenience of the parties and counsel. Cal. Civ. Proc. Code § 404.1.

Coordination is meant to further the efficient handling of multiple, complex matters. These cases, if ordered, are perfectly positioned to reap those benefits. Litigation is in its earliest stages. If coordinated, the rules contemplate an early hearing for the court to establish, *inter alia*, a discovery schedule, a central depository to maintain evidentiary materials, a motion schedule, and the appointment of liaison counsel. Cal. Rule of Court, Rule 3.541(a).

The coordination rules provide for interim and automatic stays in order to avoid piecemeal discovery and motion practice, and multiple response deadlines in separate cases. A stay would preserve the status quo and, if the cases are coordinated, allow one judge to manage these cases in their entirety as the rules contemplate.

There is no compelling reason not to grant the interim stay. No action is subject to a trial or trial schedule that would be affected by a stay.  In the event coordination is denied, the plaintiffs will proceed individually and any delay will have been brief. If coordination is granted, the assigned judge's handling of the actions will achieve the desired results of coordination in an orderly fashion and with fewer burdens.

Therefore, Petitioners respectfully request that the Court grant an interim stay and preserve the status quo pending the outcome of this Petition.

/ / /

VII.    **CONCLUSION**

Coordination should be ordered because it is appropriate under the standards set out in Section 404.1 of the Code of Civil Procedure, in that the common questions of fact and law predominate and are significant to the litigation, so that coordination will be convenient to the parties, witnesses, and counsel and will avoid duplicative and inconsistent rulings.

DATED: October 19, 2016                    Respectfully submitted,

                                           **KIESEL LAW LLP**


                                           By: _____
                                               Paul R. Kiesel
                                               Helen Zukin
                                               Melanie Palmer

                                           **SALIM-BEASLEY, LLC**
                                           Barrett Beasley
                                           Robert L. Salim
                                           Lisa Causey-Streete

                                           Attorneys for Plaintiffs and Petitioners

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR COORDINATION**

1 | Paul R. Kiesel, State Bar No. 119854
     *kiesel@kiesel.law*
2 | Helen Zukin, State Bar No. 117933
     *zukin@kiesel.law*
3 | Melanie Palmer, State Bar No. 286752
     *palmer@kiesel.law*
4 | **KIESEL LAW LLP**
   8648 Wilshire Boulevard
5 | Beverly Hills, California 90211-2910
   Tel:   310-854-4444
6 | Fax:   310-854-0812

7 | Barrett L. Beasley, State Bar No. 194143
     *bbeasley@salim-beasley.com*
8 | Robert L. Salim [*Pro Hac Vice* Pending]
     *robertsalim@cp-tel.net*
9 | Lisa Causey-Streete [*Pro Hac Vice* Pending]
     *lcausey@salim-beasley.com*
10 | **SALIM-BEASLEY, LLC**
    1901 Texas Street
11 | Natchitoches, Louisiana 71457
    Tel:   (318) 352-5999
12 | Fax:   (318) 352-5998

13 | Attorneys for Plaintiffs and Petitioners

14 | **JUDICIAL COUNCIL OF CALIFORNIA**

15 | **CHAIR OF THE JUDICIAL COUNCIL**

16 |

17 | BONNIE MCINTOSH,                          JCCP No. 4899

18 |            Plaintiff and Petitioner,      Santa Cruz County Superior Court
                                              Case No. 16CV02437
19 |     v.

20 | MCKESSON CORPORATION, et al.,            **DECLARATION OF HELEN ZUKIN IN
                                              SUPPORT OF PETITION FOR
            Defendants and Respondents.       COORDINATION OF ELIQUIS
21 |                                          PRODUCT LIABILITY ACTIONS**

22 |                                          [*Filed concurrently with Petition for
                                              Coordination and Memorandum of Points and
23 |                                          Authorities*]

24 | RICHARD FONGER, et al.,                  San Diego County Superior Court
                                              Case No. 37-2016-00034957-CU-PL-NC
25 |            Plaintiffs and Petitioner,

26 |     v.

27 | MCKESSON CORPORATION, et al.,

28 |            Defendants and Respondents.

---

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

RECEIVED

OCT 2 0 2016

JUDICIAL COUNCIL OF CALIFORNIA

BY _____

COORDINATION ATTORNEY

| | |
|---|---|
| GABRIEL DELLUTRI,<br><br>        Plaintiff and Petitioner,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>        Defendants and Respondents. | Los Angeles County Superior Court<br>Case No. BC636969 |
| OZRA LEBASTCHI,<br><br>        Plaintiff and Petitioner,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>        Defendants and Respondents. | Los Angeles County Superior Court<br>Case No. BC637075 |
| DOLORES WILLIAMS,<br><br>        Plaintiff and Petitioner,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>        Defendants and Respondents. | Los Angeles County Superior Court<br>Case No. BC637219 |
| JUDY HAYES,<br><br>        Plaintiff and Petitioner,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>        Defendants and Respondents. | Riverside County Superior Court<br>Case No. RIC 1613388 |
| FLORENCE QUARG,<br><br>        Plaintiff and Petitioner,<br><br>v.<br><br>MCKESSON CORPORATION, et al.,<br><br>        Defendants and Respondents. | San Diego County Superior Court<br>Case No. 37-2016-00035743-CU-PL-CTL |
| NORMA STUART,<br><br>        Plaintiff and Petitioner,<br><br>v. | Orange County Superior Court<br>Case No. 30-2016-00880347-CU-PL-CXC |

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

1  MCKESSON CORPORATION, et al.,

2          Defendants and Respondents.

3

4  RANDALL CROSBY,           Mendocino County Superior Court
                              Case No. SCUK-CVPO-2016-68260

5          Plaintiff and Petitioner,

6  v.

7  MCKESSON CORPORATION, et al.,

        Defendants and Respondents.

8

9  **DECLARATION OF HELEN ZUKIN**

10      I, Helen Zukin, declare and state as follows:

11        1.  I am an attorney at law, duly licensed to practice before this Court and all of the courts

12  of the State of California, and a partner of Kiesel Law LLP, counsel of record for Plaintiffs Bonnie

13  McIntosh, Richard Fonger and Jean Kelley, Gabriel Dellutri, Ozra Lebastchi, Dolores Williams, Judy

14  Hayes, Florence Quarg, Norma Stuart, and Randall Crosby. I make this Declaration in support of the

15  Petition for Coordination of Eliquis Product Liability Actions. I have personal knowledge of the

16  matters stated in this Declaration and know them to be true and correct.

17        2.  The names of the petitioners and the names and addresses of their attorneys of record

18  are as follows:

19      **Petitioners:**  Bonnie McIntosh, Richard Fonger and Jean Kelley, Gabriel Dellutri, Ozra

20  Lebastchi, Dolores Williams, Judy Hayes, Florence Quarg, Norma Stuart, and Randall Crosby.

21      **Petitioners' Attorneys of Record**

22  Paul R. Kiesel, Esq.           Barrett L. Beasley
   Helen Zukin, Esq.             Robert L. Salim

23  Melanie Meneses Palmer, Esq.    Lisa Causey-Streete
   Kiesel Law LLP               Salim-Beasley, LLC

24  8648 Wilshire Blvd.          1901 Texas Street
   Beverly Hills, CA 90211      Natchitoches, Louisiana 71457

25

26        3.  The names of the parties to all included actions, the name and address of each party's

27  attorney of record, the complete title of each included action, the number of the action, the title of the

28  court in which the action is pending, and the status of each included action, including the status of any

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

pretrial or discovery motions or orders in that action which are known to Petitioner are as follows:

    a. *Mariano Aguirre, et al. v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC633591 (filed 09/09/2016);

        i. **Judicial Officer**: Hon. Steven J. Kleifield, Department 324, Los Angeles County Superior Court – Central Civil West Courthouse;

        ii. **Plaintiff**: Mariano Aguirre, Sr., and Mariano Aguirre, Jr.;

        iii. **Attorney for Plaintiff**: Michael Louis Kelly, Kirtland & Packard LLP, 2041 Rosecrans Avenue, Third Floor, El Segundo, California 90245;

        iv. **Defendant**: Mckesson Corporation;

        v. **Defendant**: Bristol-Myers Squibb Company ("BMS");

        vi. **Defendant**: Pfizer, Inc.;

        vii. **Attorney for Defendant Mckesson Corporation**: Morrison & Foerster, Julie Park, 12531 High Bluff Drive, Suite 100, San Diego, CA 92130

        viii. **Attorney for Defendants BMS and Pfizer, Inc**: DLA Piper LLP, Matthew A. Holian, 33 Arch Street, 26th Floor, Boston, Massachusetts 02110; Brooke Killian Kim, 401 B Street, Suite 1700 San Diego, California 92101.

    b. *Bonnie McIntosh v. McKesson Corporation, et al.*, Santa Cruz County Superior Court Case No. 16CV02437 (filed 09/21/2016);

        i. **Judicial Officer**: Judge Paul Burdick in Department 5, Santa Cruz County Superior Court – 701 Ocean Street, Santa Cruz, CA 95060

        ii. **Plaintiff**: Bonnie McIntosh

        iii. **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

        iv. **Defendant**: Mckesson Corporation;

        v. **Defendant**: Bristol-Myers Squibb Company

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

vi. **Defendant**: Pfizer, Inc.;

c. *Richard Fonger, et al. v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00034957-CU-PL-NC (filed 10/05/2016);

i. **Judicial Officer**: Judge Robert P. Dahlquist in Department N-29 of the San Diego County Superior Court – North County Vista, 325 South Melrose Drive, Vista, CA 92081;

ii. **Plaintiffs**: Richard Fonger and Jean Kelley

iii. **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

iv. **Defendant**: Mckesson Corporation;

v. **Defendant**: Bristol-Myers Squibb Company

vi. **Defendant**: Pfizer, Inc.;

d. *Gabriel Dellutri v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC636969 (filed 10/12/2016);

i. **Judicial Officer**: Judge Steven J. Kleifield in Department 324 in Los Angeles Superior Court – Central Civil West, 600 South Commonwealth Avenue, Los Angeles, CA 90005

ii. **Plaintiff**: Gabriel Dellutri

iii. **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

iv. **Defendant**: Mckesson Corporation;

v. **Defendant**: Bristol-Myers Squibb Company

vi. **Defendant**: Pfizer, Inc.;

e. *Ozra Lebastchi v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC637075 (filed 10/12/2016);

i. **Judicial Officer**: Judge Steven J. Kleifield in Department 324 in Los

3

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

Angeles Superior Court – Central Civil West, 600 South Commonwealth Avenue, Los Angeles, CA 90005;

    ii.  **Plaintiff**: Ozra Lebastchi

    iii.  **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

    iv.  **Defendant**: Mckesson Corporation;

    v.  **Defendant**: Bristol-Myers Squibb Company

    vi.  **Defendant**: Pfizer, Inc.;

  f.  *Dolores Williams v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC637219 (filed 10/12/2016);

    i.  **Judicial Officer**: Judge Steven J. Kleifield in Department 324 in Los Angeles Superior Court – Central Civil West, 600 South Commonwealth Avenue, Los Angeles, CA 90005;

    ii.  **Plaintiff**: Dolores Williams

    iii.  **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

    iv.  **Defendant**: Mckesson Corporation;

    v.  **Defendant**: Bristol-Myers Squibb Company

    vi.  **Defendant**: Pfizer, Inc.;

  g.  *Judy Hayes v. McKesson Corporation, et al.*, Riverside County Superior Court Case No. RIC1613388 (filed 10/12/2016);

    i.  **Judicial Officer**: Judge Craig G. Riemer in Department 5 of the Riverside County Superior Court – 4050 Main Street, Riverside, CA 92501;

    ii.  **Plaintiff**: Judy Hayes

    iii.  **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire

4

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

1    Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-

2    Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

3        iv.  **Defendant**: Mckesson Corporation;

4        v.   **Defendant**: Bristol-Myers Squibb Company

5        vi.  **Defendant**: Pfizer, Inc.;

6    h.  *Florence Quarg v. McKesson Corporation, et al.*, San Diego County Superior

7        Court Case No. 37-2016-00035743-CU-PL-CTL (filed 10/12/2016);

8        i.   **Judicial Officer**: Judge Ronald L. Styn in Department C-62 of the

9             San Diego County Superior Court – Central, 330 West Broadway, San

10            Diego, CA 92101;

11       ii.  **Plaintiff**: Florence Quarg

12       iii. **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire

13            Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-

14            Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

15       iv.  **Defendant**: Mckesson Corporation;

16       v.   **Defendant**: Bristol-Myers Squibb Company

17       vi.  **Defendant**: Pfizer, Inc.;

18   i.  *Norma Stuart v. McKesson Corporation, et al.*, Orange County Superior Court

19       Case No. 30-2016-00880347-CU-PL-CXC (filed 10/11/2016);

20       i.   **Judicial Officer**: Judge Kim G. Dunning in Department CX104,

21            Orange County Superior Court – Civil Complex Center, 751 West

22            Santa Ana Blvd., Santa Ana, CA 92701

23       ii.  **Plaintiff**: Norma Stuart

24       iii. **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire

25            Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-

26            Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

27       iv.  **Defendant**: Mckesson Corporation;

28       v.   **Defendant**: Bristol-Myers Squibb Company

5

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

vi.   **Defendant**: Pfizer, Inc.;

j.   *Randall Crosby v. McKesson Corporation, et al.*, Mendocino County Superior Court Case No. SCUK-CVPO-2016-68260 (filed 10/17/2016);

i.   **Judicial Officer**: Judge Jeanine Nadel in Department E of the Mendocino County Superior Court – 100 North State Street, Ukiah, CA 95482;

ii.   **Plaintiff**: Randall Crosby

iii.   **Attorney for Plaintiff**: Helen Zukin, Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, CA 90211; Barrett L. Beasley, Salim-Beasley, LLC, 1901 Texas Street, Natchitoches, Louisiana 71457;

iv.   **Defendant**: Mckesson Corporation;

v.   **Defendant**: Bristol-Myers Squibb Company

vi.   **Defendant**: Pfizer, Inc.

4.   Based on the sheer number of sales of Eliquis to patients in California, Petitioners further anticipate hundreds, if not thousands, of potential cases to be filed in California courts alleging similar injuries arising out the use of Eliquis.

5.   The actions sought to be coordinated here, for pretrial purposes only, are complex actions, as defined by the Judicial Council in California Rules of Court, Rules 3.502 and 3.400, so as to allow their coordination under Code of Civil Procedure Section 404. The included actions will involve numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; management of a large number of witnesses and a substantial amount of documentary evidence; and management of a large number of separately represented parties. Furthermore, the included actions are provisionally complex under California Rules of Court Section 3.400(b) because they involve mass torts.

6.   The Eliquis Product Liability Actions require resolution of similar or even identical factual and legal issues. The included cases involve common questions of fact or law against the same or a similar group of defendants. The Eliquis Product Liability Actions each involve a dispute as to whether Eliquis was dangerous and defective. The included actions allege that Defendants negligently

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

1  and intentionally represented that Eliquis had been tested and was found to be safe and effective for its

2  indicated uses. These representations were made with the intent to deceive and with the intent of

3  inducing the purchase of Eliquis. Defendants concealed their knowledge of Eliquis' defects and risk,

4  and caused Plaintiffs and Petitioners serious and even fatal side effects as a result of internal bleeding.

5  The dispute is essentially the same for each of the included actions with some variance as to theories

6  of liability and prayers for relief. Each of the included actions necessarily involves a court's

7  interpretation and application of a similar set of California laws.

8         7.   This Petition is made on the grounds that the Eliquis Product Liability Actions share

9  common questions of law and fact, and coordination will promote the ends of justice as required by

10 Code Civ. Proc. § 404.1 and 404.4 for the following reasons:

11        • The included actions require resolution of similar or even identical factual and

12           legal issues;

13        • Coordination will further the convenience of the parties, witnesses, and counsel;

14        • Most of the named defendants in any one included action are common to all

15           included actions;

16        • Defense counsel for Defendants Bristol-Meyers Squibb  and Pfizer, Inc, namely

17           the law firm of  DLA Piper LLP, will likely be the same counsel of record in each

18           of the included actions;

19        • Defense counsel for Defendant Mckesson Corporation, namely the law firm of

20           Morrison & Foerster, will likely be the same counsel of record in each of the

21           included actions;

22        • To the best of Petitioners knowledge, no answers have yet been filed in these

23           actions, and discovery has yet to be served. In several of these cases, to the best of

24           my knowledge, Defendants' counsels have yet to make an appearance.

25        • Coordination will further the efficient utilization of judicial resources; and

26        • Coordination will avoid the disadvantages of duplicative and potentially

27           inconsistent rulings, orders, and judgments.

28     8.   Coordination of the included actions will promote the efficient use of judicial and

---
7

**DECLARATION OF HELEN ZUKIN IN SUPPORT OF PETITION FOR COORDINATION**

parties' resources and will accommodate the convenience of all counsel by preventing the duplication of effort and the costly adjudication of the same or substantially similar motions, such as demurrers, judgment on the pleadings and motions for summary judgment. Coordination will also avoid duplicative discovery. Each included action involves common defendants. Many witnesses, factual and expert, are likely to be the same in all of these cases. Thus, coordination will also advance the potential witnesses by avoiding duplicative depositions. Coordination will also advance the convenience of counsel by conserving their resources through cooperative discovery that will benefit all parties and the court in the form of cost savings. Further, it is anticipated that additional plaintiffs will likely be filing in Los Angeles County. Thus, because Los Angeles County is the venue for the most plaintiffs, discovery proceedings would be facilitated by coordination in Los Angeles County.

9.   The Eliquis Product Liability Actions are pending in the Superior Court of California, but in different Counties and Departments. The cases involve claims arising from the same conduct by the defendants – the design and manufacture of a defective pharmaceutical product.

10. The included cases will involve significant motion practice.  Motion practice, document discovery, depositions of witnesses, and other aspects of litigation will follow a similar course of conduct throughout the cases.

11. A hearing on this petition may conveniently and appropriately be held at Los Angeles Superior Court.

### EXHIBITS

12. Attached as **Exhibit 1** is a true and correct copy of the complaint *Mariano Aguirre, et al. v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC633591 (filed 09/09/2016);

13. Attached as **Exhibit 2** is a true and correct copy of the complaint *Bonnie McIntosh v. McKesson Corporation, et al.*, Santa Cruz County Superior Court Case No. 16CV02437 (filed 09/21/2016);

14. Attached as **Exhibit 3** is a true and correct copy of the complaint *Richard Fonger, et al. v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00034957-CU-PL-NC (filed 10/05/2016);

8

15. Attached as **Exhibit 4** is a true and correct copy of the complaint *Gabriel Dellutri v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC636969 (filed 10/12/2016);

16. Attached as **Exhibit 5** is a true and correct copy of the complaint *Ozra Lebastchi v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC637075 (filed 10/12/2016);

17. Attached as **Exhibit 6** is a true and correct copy of the complaint *Dolores Williams v. McKesson Corporation, et al.*, Los Angeles County Superior Court Case No. BC637219 (filed 10/12/2016);

18. Attached as **Exhibit 7** is a true and correct copy of the complaint *Judy Hayes v. McKesson Corporation, et al.*, Riverside County Superior Court Case No. RIC1613388 (filed 10/12/2016);

19. Attached as **Exhibit 8** is a true and correct copy of the complaint *Florence Quarg v. McKesson Corporation, et al.*, San Diego County Superior Court Case No. 37-2016-00035743-CU-PL-CTL (filed 10/12/2016);

20. Attached as **Exhibit 9** is a true and correct copy of the complaint *Norma Stuart v. McKesson Corporation, et al.*, Orange County Superior Court Case No. 30-2016-00880347-CU-PL-CXC (filed 10/11/2016);

21. Attached as **Exhibit 10** is a true and correct copy of the complaint *Randall Crosby v. McKesson Corporation, et al.*, Mendocino County Superior Court Case No. SCUK-CVPO-2016-68260 (filed 10/17/2016);

22. Petitioners will submit to the Chair of the Judicial Council, notice and proof of filing in each included action, within five (5) court days of submitting the Petition for Coordination, as required by Rule 3.522.

/ / /

/ / /

/ / /

/ / /

9

23. Petitioners will serve the Notice of Submission of Petition for Coordination, the Petition for Coordination, and all supporting documents on each party appearing in each included action and submit the notice to the Chair of the Judicial Council within five court days of submitting the Petition for Coordination, as required by Rule 3.523.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on October 19, 2016, at Beverly Hills, California.

_____
Helen Zukin

# EXHIBIT B

ABOUT MCKESSON     INVESTORS     CAREERS     CONTACT US
CUSTOMER LOGIN

Browse

What can we help you find?                                                    Search

HOME  /  PHARMACEUTICAL MANUFACTURERS  /  COMMERCIAL SERVICES FOR MANUFACTURERS

# Commercial Services for Manufacturers

OVERVIEW

PHARMACEUTICAL
DISTRIBUTION

THIRD PARTY LOGISTICS

PHARMACEUTICAL
PACKAGING

GROUP PURCHASING
ORGANIZATION
SERVICES

CLINICAL TRIAL
SERVICES

HEALTH CARE
INFORMATICS

COMMERCIAL SERVICES

Our complete and comprehensive suite of commercial and marketing services will help you create, execute and measure the performance of a customized brand strategy to grow your pharmaceutical offerings across every stage of their product lifecycle.

McKesson facilitates access to your pharmaceutical products through reimbursement assistance, subsidized care and safety programs. We deliver your brand message to patients and pharmacies through multiple communication channels such as email, behavioral call campaigns and more. We build long-term brand relationships by helping you overcome the financial, operational and behavioral barriers to medication adherence by consumers and patients.

With longstanding, active relationships across the continuum of care, McKesson brings a unique 360-degree perspective to our work, as well as a wide and deep pool of resources to deliver effective solutions for your brand needs. Your stakeholders count on you to deliver pharmaceutical products that improve both health and business outcomes. Let us help you deliver on that promise.

## Patient

Patient Adherence and Acquisition Programs

Patient Assistance Programs (PAPs)

Patient Engagement and Outreach

Reimbursement and Access Services Solution Center

Risk Evaluation and Mitigation Strategies (REMS) Services

## Pharmacy

Pharmacy Intervention Programs

Pharmacy Awareness and Education

top

Provider

Provider Engagement

## Leveraging Patient Savings Programs

Patient savings programs can lower financial barriers, reduce prescription abandonment and increase adherence.

LEARN MORE

## Top Five Trends That Will Impact Health System Pharmacies in 2016

Movement toward value-based reimbursement means health systems increasingly look to pharmacies as a source of revenue growth.

LEARN MORE

    

| ABOUT MCKESSON | POPULAR PRODUCTS | CUSTOMER ORDERING | OUR BUSINESSES |
|---|---|---|---|
| Who We Are | Medical Supplies | Medical Supplies & Equipment | Health Solutions |
| Our Values | InterQual | Pharmaceuticals: Branded & Generic | Medical-Surgical |
| Locations | Electronic Health Records | Brand Products | Pharmaceutical Distribution |
| Corporate Citizenship | Paragon | Specialty and Oncology Drugs | Pharmacy Systems |

top

Newsroom

Event Calendar

Connect With McKesson

**BLOG**

**CAREERS**

Find A Job

Campus Recruiting

iKnowMed

Revenue Cycle Management

Health Mart

OneStop Generics Purchasing

Plasma and Biologics Distribution

Plasma Products

Homecare Products for Consumers

**INVESTORS**

Financial News

Events

Financial Information

Stock Information

Stockholder Services

Corporate Governance

Specialty Health and The US

Oncology Network

Healthcare Technology Solutions

RelayHealth

**MCKESSON INTERNATIONAL**

Canada

**MCKESSON VENTURES**



CONTACT US     PRIVACY NOTICE     DISCLAIMER     PATENTS     SITE MAP

© 2016 McKesson Corporation

top

# EXHIBIT C

This site is intended for
U.S. Healthcare Professionals

Resources +

- U.S. Full Prescribing Information, including **Boxed WARNINGS**
- Medication Guide
- Patient Site

**INDICATIONS**
U.S. Full Prescribing Information, including **Boxed WARNIngs**



Patient Site

- Product Links
- Indications

Menu

- Home
- About ELIQUIS
- Dosing
- Formulary Coverage & Reimbursement
- Patient Offers & Resources
- HCP Resources
- Stroke Risk Reduction in Nonvalvular AF
- DVT/PE Treatment & Reduction in Risk of Recurrence
- Prophylaxis of DVT After Hip
  or Knee Replacement Surgery

# Patient Offers & Resources



- Home
- About ELIQUIS
- Dosing
- Formulary Coverage & Reimbursement
- Patient Offers & Resources
- HCP Resources
- Stroke Risk Reduction in Nonvalvular AF
- DVT/PE Treatment & Reduction in Risk of Recurrence
- Prophylaxis of DVT After Hip
  or Knee Replacement Surgery

# Patient Offers & Resources

# A Savings Offer and Additional Resources for Your Patients

Encourage your patients to take advantage of the resources, and to enroll in ELIQUIS 360 Support—a free program that focuses on the patient.

## ELIQUIS $10 Co-pay Card*



Eligible patients with commercial insurance who comply with the Terms of Use can pay no more than $10 per month for a 30-day supply for up to 24 months with the ELIQUIS Co-pay Card.*

- Subject to a maximum annual benefit of $3,800



To get ELIQUIS co-pay cards for your patients, please contact a representative.

[*Click here to see Co-pay Card patient eligibility requirements and terms of use](#)

## $10 CO-PAY CARD ELIGIBILITY REQUIREMENTS:

- You may be eligible for the Co-pay Card for ELIQUIS® (apixaban) if:

  1. You are insured by commercial insurance and your prescription insurance coverage does not cover the full cost of your prescription, that is, you have a co-pay obligation for ELIQUIS;
  2. You do not have prescription insurance coverage through a state or federal healthcare program, including but not limited to Medicare Part D, Medicaid, Medigap, Veterans Affairs (VA), or Department of Defense (DOD) programs; patients who move from commercial plans to state or federal healthcare programs will no longer be eligible;
  3. You are 18 years of age or older; and
  4. You are a resident of the United States or Puerto Rico.

# $10 CO-PAY CARD TERMS OF USE:

1. Eligible patients who present an activated Co-pay Card together with a valid prescription for ELIQUIS at participating pharmacies can pay no more than $10 per 30-day supply (up to 74 tablets for the first fill and up to 60 tablets for all subsequent fills) for up to 24 months, subject to a maximum annual benefit of $3800. Other restrictions may apply. Patient is responsible for applicable taxes, if any.
2. Offer not applicable to co-pays of $10 or less.
3. Patients, pharmacists, and prescribers cannot seek reimbursement, from health insurance or any third party, for any part of the benefit received by the patient through this offer.
4. Your acceptance of this offer confirms that this offer is consistent with your insurance and that you will report the value received as may be required by your insurance provider.
5. Card must be activated before use. Card expires 24 months from activation. Upon expiration, eligible patients may re-enroll in the Co-pay Card Program.
6. This offer to participate in the Program expires on December 31, 2017. Activation and first use of the Co-pay Card must take place by December 31, 2017. Absent a change in Massachusetts law, <u>for Massachusetts residents only</u>, this offer will expire on June 30, 2017.
7. Only valid in the United States and Puerto Rico; this offer is void where restricted or prohibited by law.
8. This offer is non-transferable, no substitutions are permissible, and offer cannot be combined with any other rebate/coupon, free trial, or similar offer for the specified prescription.
9. The Co-pay Card may not be sold, purchased, traded, or counterfeited. Reproductions of this Co-pay Card are void.
10. Bristol-Myers Squibb and Pfizer reserve the right to rescind, revoke, or amend this offer at any time without notice.
11. This offer is not conditioned on any past, present, or future purchase, including refills.
12. No membership fees.
13. **The Co-pay Card for ELIQUIS is not insurance.**

**The Co-pay Card will be accepted only at participating pharmacies. For those customers using mail order or any non-participating retail pharmacy, please call 866-279-4730 to request a patient rebate form, or go to [www.patientrebateonline.com](http://www.patientrebateonline.com) to download a form.**

Questions can also be submitted via mail to:
P.O. Box 2914
Phoenix, AZ 85062-2914

BY USING THIS CARD, YOU AND YOUR PHARMACIST UNDERSTAND AND AGREE TO COMPLY WITH THESE ELIGIBILITY REQUIREMENTS AND TERMS OF USE.

**To the pharmacist:** For processing assistance, please call McKesson Pharmacy Support at 1-866-279-4730.

# ELIQUIS Free 30-Day Trial Offer[†]



One-time, free 30-day trial for eligible patients who are commercially and government-insured (including Medicare and Medicaid) as well as those who are cash-paying

- Offer limited to one per patient upon redemption of their first valid 30-day prescription at a pharmacy



To get ELIQUIS free trial cards for your patients, please contact a representative.

‡Click here to see Free Trial Offer patient eligibility requirements and terms of use

# 30-DAY FREE TRIAL OFFER ELIGIBILITY REQUIREMENTS:

- You may be eligible for the Free 30-Day Trial Offer for ELIQUIS® (apixaban) if:

  1. You have not previously filled a prescription for ELIQUIS;
  2. You have a valid 30-day prescription for ELIQUIS;
  3. You are being treated for an ELIQUIS FDA-approved indication and chronic condition;
  4. You are 18 years of age, or older; and
  5. You are a resident of the United States or Puerto Rico.

# 30-DAY FREE TRIAL OFFER TERMS OF USE:

1. Eligible patients who present a Free 30-Day Trial card together with a valid 30-day prescription for ELIQUIS at participating pharmacies can receive a free 30-day supply (up to 74 tablets) of ELIQUIS. Patient is responsible for applicable taxes, if any. This offer may not be redeemed on prescriptions written for longer than 30 days.
2. This offer is limited to one use per patient per lifetime and is non-transferable. By redeeming this offer, you certify that you have not previously filled a prescription for ELIQUIS.
3. The Free 30-Day Trial for the specified prescription cannot be combined with any other rebate/coupon, free trial, or similar offer. No substitutions are permitted.
4. Patients, pharmacists, and prescribers cannot seek reimbursement for the Free 30-Day Trial of ELIQUIS from health insurance or any third party, including state or federally funded programs.
5. Patients may not count the Free 30-Day Trial of ELIQUIS as an expense incurred for purposes of determining out-of-pocket costs for any plan, including true out-of-pocket costs, ("TrOOP"), for purposes of calculating the out-of-pocket threshold for Medicare Part D plans.
6. Card must be activated before use. Activation and use of the Free 30-Day Trial card must take place by December 31, 2017. This card expires on December 31, 2017.
7. Only valid in the United States and Puerto Rico; this offer is void where restricted or prohibited by law.
8. Bristol-Myers Squibb and Pfizer reserve the right to rescind, revoke, or amend this offer at any time without notice.
9. This Free 30-Day Trial card may not be sold, purchased, traded, or counterfeited. Reproductions of this card are void.
10. This offer is not conditioned on any past, present, or future purchase, including refills.
11. **The ELIQUIS Free 30-Day Trial offer is not insurance.**

BY USING THIS CARD, YOU AND YOUR PHARMACIST UNDERSTAND AND AGREE TO COMPLY WITH THESE ELIGIBILITY REQUIREMENTS AND TERMS OF USE.

**To the pharmacist:** For processing assistance, please call McKesson Pharmacy Support at 1-866-279-4730.

# ELIQUIS 360 Support and the Patient Website



With ELIQUIS, your patients get ELIQUIS 360 Support, a program that focuses on the patient. This program includes the co-pay offer and assistance with insurance prescription coverage. Your patients can learn more about ELIQUIS and **ELIQUIS 360 Support** by visiting ELIQUIS.com



# Educational Resources for Your Patients

Below are several patient-friendly resources available to help you explain to your patients their medical condition, why they are being prescribed ELIQUIS, and how ELIQUIS works.

- 1 Patient Education Videos

These animated videos can help your patients understand nonvalvular atrial fibrillation (NVAF) and its associated risk of stroke; deep vein thrombosis (DVT), pulmonary embolism (PE); and the need for anticoagulants like ELIQUIS for appropriate patients



Introduction to The Simple

How AFib Can Lead



Why Blood

- 2 | Helpful Downloads

ELIQUIS NVAF Starter Guide (PDF)

A patient guide to starting and taking ELIQUIS

Download the NVAF Starter Guide



Download the NVAF Starter Guide

Signs of a Stroke (PDF)

A simple reference for patients and caregivers to keep handy

Download Signs of a Stroke



Download Signs of a Stroke

- 3 | DVT/PE Treatment
  Starter GuideStarter Guide

This ELIQUIS Starter Guide contains patient-friendly information about DVT/PE and treatment with ELIQUIS. This resource is currently only available through your sales representative. Please contact your representative to have copies of this starter guide delivered to your office.



Next: HCP Resources
⊖Collapse
IMPORTANT SAFETY INFORMATION

WARNING: (A) PREMATURE DISCONTINUATION OF ELIQUIS INCREASES THE RISK OF THROMBOTIC EVENTS,
(B) SPINAL/EPIDURAL HEMATOMA

(A) Premature discontinuation of any oral anticoagulant, including ELIQUIS, increases the risk of thrombotic events. If anticoagulation with ELIQUIS is discontinued for a reason other than pathological bleeding or completion of a course of therapy, consider coverage with another anticoagulant.

(B) Epidural or spinal hematomas may occur in patients treated with ELIQUIS who are receiving neuraxial anesthesia or undergoing spinal puncture. These hematomas may result in long-term or permanent paralysis. Consider these risks when scheduling patients for spinal procedures. Factors that can increase the risk of developing epidural or spinal hematomas in these patients include:

- use of indwelling epidural catheters
- concomitant use of other drugs that affect hemostasis, such as nonsteroidal anti-inflammatory drugs (NSAIDs), platelet inhibitors, other anticoagulants
- a history of traumatic or repeated epidural or spinal punctures
- a history of spinal deformity or spinal surgery
- optimal timing between the administration of ELIQUIS and neuraxial procedures is not known

Monitor patients frequently for signs and symptoms of neurological impairment. If neurological compromise is noted, urgent treatment is necessary.

Consider the benefits and risks before neuraxial intervention in patients anticoagulated or to be anticoagulated.

CONTRAINDICATIONS

- Active pathological bleeding
- Severe hypersensitivity reaction to ELIQUIS (e.g., anaphylactic reactions)

WARNINGS AND PRECAUTIONS

- Increased Risk of Thrombotic Events after Premature Discontinuation: Premature discontinuation of any oral anticoagulant, including ELIQUIS, in the absence of adequate alternative anticoagulation increases the risk of thrombotic events. An increased rate of stroke was observed during the transition from ELIQUIS to warfarin in clinical trials in atrial fibrillation patients. If ELIQUIS is discontinued for a reason other than pathological bleeding or completion of a course of therapy, consider coverage with another anticoagulant.

- Bleeding Risk: ELIQUIS increases the risk of bleeding and can cause serious, potentially fatal, bleeding.
  - Concomitant use of drugs affecting hemostasis increases the risk of bleeding, including aspirin and other antiplatelet agents, other anticoagulants, heparin, thrombolytic agents, SSRIs, SNRIs, and NSAIDs.

- Advise patients of signs and symptoms of blood loss and to report them immediately or go to an emergency Discontinue ELIQUIS in patients with active pathological hemorrhage.

- There is no established way to reverse the anticoagulant effect of apixaban, which can be expected to persist least 24 hours after the last dose (i.e., about two half-lives). A specific antidote for ELIQUIS is not available

- Spinal/Epidural Anesthesia or Puncture: Patients treated with ELIQUIS undergoing spinal/epidural anesthesia or puncture may develop an epidural or spinal hematoma which can result in long-term or permanent paralysis.

  The risk of these events may be increased by the postoperative use of indwelling epidural catheters or the concomitant use of medicinal products affecting hemostasis. Indwelling epidural or intrathecal catheters should not be removed earlier than 24 hours after the last administration of ELIQUIS. The next dose of ELIQUIS should not b administered earlier than 5 hours after the removal of the catheter. The risk may also be increased by traumatic or repeated epidural or spinal puncture. If traumatic puncture occurs, delay the administration of ELIQUIS for 48 hours.

  Monitor patients frequently and if neurological compromise is noted, urgent diagnosis and treatment is necessary. Physicians should consider the potential benefit versus the risk of neuraxial intervention in ELIQUIS patients.

- Prosthetic Heart Valves: The safety and efficacy of ELIQUIS have not been studied in patients with prosthetic hear valves and is not recommended in these patients.

- Acute PE in Hemodynamically Unstable Patients or Patients who Require Thrombolysis or Pulmonary Embolectomy: Initiation of ELIQUIS is not recommended as an alternative to unfractionated heparin for the initial treatment of patients with PE who present with hemodynamic instability or who may receive thrombolysis or pulmonary embolectomy.

## ADVERSE REACTIONS

- The most common and most serious adverse reactions reported with ELIQUIS were related to bleeding.

## TEMPORARY INTERRUPTION FOR SURGERY AND OTHER INTERVENTIONS

- ELIQUIS should be discontinued at least 48 hours prior to elective surgery or invasive procedures with a moderate or high risk of unacceptable or clinically significant bleeding. ELIQUIS should be discontinued at least 24 hours prior to elective surgery or invasive procedures with a low risk of bleeding or where the bleeding would be noncritical in location and easily controlled. Bridging anticoagulation during the 24 to 48 hours after stopping ELIQUIS and prior to the intervention is not generally required. ELIQUIS should be restarted after the surgical or other procedures as soon as adequate hemostasis has been established.

## DRUG INTERACTIONS

- Strong Dual Inhibitors of CYP3A4 and P-gp: Inhibitors of cytochrome P450 3A4 (CYP3A4) and P-glycoprotein (P gp) increase exposure to apixaban and increase the risk of bleeding. For patients receiving ELIQUIS doses of 5 mg or 10 mg twice daily, reduce the dose of ELIQUIS by 50% when ELIQUIS is coadministered with drugs that are strong dual inhibitors of CYP3A4 and P-gp (e.g., ketoconazole, itraconazole, ritonavir, or clarithromycin). In patients already taking 2.5 mg twice daily, avoid coadministration of ELIQUIS with strong dual inhibitors of CYP3A4 and P-gp.

- Strong Dual Inducers of CYP3A4 and P-gp: Avoid concomitant use of ELIQUIS with strong dual inducers of CYP3A4 and P-gp (e.g., rifampin, carbamazepine, phenytoin, St. John's wort) because such drugs will decrease exposure to apixaban and increase the risk of stroke and other thromboembolic events.

- Anticoagulants and Antiplatelet Agents: Coadministration of antiplatelet agents, fibrinolytics, heparin, aspirin, and chronic NSAID use increases the risk of bleeding. APPRAISE-2, a placebo-controlled clinical trial of apixaban in

high-risk post-acute coronary syndrome patients treated with aspirin or the combination of aspirin and clopidogrel, was terminated early due to a higher rate of bleeding with apixaban compared to placebo.

## PREGNANCY CATEGORY B

- There are no adequate and well-controlled studies of ELIQUIS in pregnant women. Treatment is likely to increase the risk of hemorrhage during pregnancy and delivery. ELIQUIS should be used during pregnancy only if the potential benefit outweighs the potential risk to the mother and fetus.

INDICATIONS

ELIQUIS is indicated to reduce the risk of stroke and systemic embolism in patients with nonvalvular atrial fibrillation.

ELIQUIS is indicated for the prophylaxis of deep vein thrombosis (DVT), which may lead to pulmonary embolism (PE), in patients who have undergone hip or knee replacement surgery.

ELIQUIS is indicated for the treatment of DVT and PE, and to reduce the risk of recurrent DVT and PE following initial therapy.

Please see U.S. FULL PRESCRIBING INFORMATION including **Boxed WARNINGS**, and MEDICATION GUIDE.

ELIQUIS is available in 2.5 mg and 5 mg tablets.

MORE IMPORTANT SAFETY INFORMATION ⊕

# SELECTED IMPORTANT SAFETY INFORMATION



**WARNING: (A) PREMATURE DISCONTINUATION OF ELIQUIS INCREASES THE RISK OF THROMBOTIC EVENTS,
(B) SPINAL/EPIDURAL HEMATOMA**

**(A) Premature discontinuation of any oral anticoagulant, including ELIQUIS, increases the risk of thrombotic events. If anticoagulation with ELIQUIS is discontinued for a reason other than pathological bleeding or completion of a course of therapy, consider coverage with another anticoagulant.**

See Full Boxed WARNINGS



# Contact Us

For your convenience, specialized Bristol-Myers Squibb representatives are available by phone or email to help you with your medical, technical, or general inquiries.

### General and Technical Inquiries

For general and technical inquiries, contact a specialized Bristol-Myers Squibb representative. Phone: (877) 517-6326 (Monday–Friday, 8 AM–8 PM ET) or email your inquiry to customer.relations@bms.com

### Adverse Event or Product Quality Complaints

If you wish to report an adverse event or product quality complaint, please call: Phone: (800) 721-5072

### Medical Information Inquiries

For specific BMS Medical Information inquiries, contact a Medical Information Professional or visit BMSMedInfo.com to search online or email your inquiry (login or registration required). Phone: (800) 321-1335 (Monday–Friday, 8 AM–8 PM ET)

  

ELIQUIS® and the ELIQUIS logo are trademarks of Bristol-Myers Squibb Company. All other trademarks are the property of their respective owners. ©2016 Bristol-Myers Squibb Company. 432US1603955-01-01 09/16



# Leaving HCP.ELIQUIS.com

You are about to leave the Bristol-Myers Squibb and Pfizer HCP.ELIQUIS.com site. You are being redirected to an external site for information on ELIQUIS® (apixaban) samples.

Continue                       Stay on this Site

   

- Legal Notice|
- Privacy Policy|
- Contact|
- Site Map

ELIQUIS® and the ELIQUIS logo are trademarks of Bristol-Myers Squibb Company. All other trademarks are the property of their respective owners.
© 2016 Bristol-Myers Squibb Company. 432US1603955-01-01 09/16



## Leaving HCP.ELIQUIS.com

**You Are Now Leaving This Site**

Links to other sites are provided only as a convenience to users of this site.

**Would you like to leave this site?**

Continue



## Leaving HCP.ELIQUIS.com

**You are about to leave the Bristol-Myers Squibb and Pfizer HCP.ELIQUIS.com site. You are being redirected to a Bristol-Myers Squibb corporate site.**

**Would you like to leave this site?**

Continue Stay on this Site



## Leaving HCP.ELIQUIS.com

**You are about to leave the Bristol-Myers Squibb and Pfizer HCP.ELIQUIS.com site. You are being redirected to a Pfizer corporate site.**

**Would you like to leave this site?**

Continue Stay on this Site

# EXHIBIT D

**McKesson**
**Patient Relationship Solutions**



Supporting patients in
their quest for good health

1   2   3

Welcome to McKesson's Patient Rebate Online Portal! McKesson Patient Relationship Solutions is pleased to provide you with this fast, reliable means to obtain patient savings. It is designed to assist you in obtaining a refund for the discount amount you paid when you presented your co-pay card.

After answering a few simple questions to validate eligibility, you will be able to download your personalized form which, along with a label and receipt, can be mailed back to McKesson for reimbursement. In most cases, checks are issued within 2-4 weeks of eligibility verification.

We aim to make this process as simple as possible. Should you have any questions or concerns completing the following steps, you may call our Patient Support Hotline or "Click to Talk" for one of our dedicated contact center support staff. This option will be available in the upper right-hand corner during our regular business hours once you get started.

Get Started

About Us    Contact Us    Privacy policy    Disclaimer    ©2011 McKesson Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 8, 2016.

DATED: November 8, 2016           Respectfully Submitted,

**KIESEL LAW LLP**


By:  _____*/s/ Helen Zukin*_____
      Helen Zukin
       *zukin@kiesel.law*
      8648 Wilshire Boulevard
      Beverly Hills, California 90211
      Tel.: (310) 854-4444
      Fax: (310) 854-0812